DARGAN, J.
This was a proceeding in the Orphans’ Court of Clarke, for final settlement of the accounts of John Dickson, former guardian of Thomas White, a minor.- It appeared that Dickson, who was the guardian of Thomas and William White, minor sons of Robert White deceased, commenced three suits in detinue to reeover certain slaves in the name of his two wards, which suits were dismissed, and then he filed a bill in equity to reform a certain deed, under which he supposed his wards had title to the slaves. On the hearing, the bill was dismissed. The costs of these suits and counsel fees he charged to the account of his wards — one half to each. These' charges were objected to, but allowed by the court.
It is certainly the duty of a guardian not only to defend, but also to bring such suits as are necessary for the protection of the rights and interests of his ward. If the guardian have a just pretence, or reasonable ground for bringing the suit,- the costs must be borne by the minor, unless the guardian has conducted himself improperly in the management of the suit and thereby swelled the amount of costs to an unreasonable extent — Alexander v. Alexander, 5 Ala. 517. But it is equally *258 clear that if a guardian or other trustee, commence suits without a possibility of recovering, or any pretence of right whatever, he ought not to be permitted to charge his ward or ces-tui que trust with the expenses of the suit; for as a suit was commenced by the improper conduct of the guardian, he must bear' the loss incured by his own improper acts. These may be said to be the general rules on the subject, and guided by them, ■vve must determine each and every case upon its own peculiar circumstances.
The supposed right of the infant wards in this case arises' from a deed executed by their father to their mother, just before their intermarriage, by which he conveyed to her a negro woman, (the mother of the slaves that were sued for.) The language of the deed is as follows: “ Know all men by these presents, that I, Robert White, for and in consideration of the love and affection I bear for Sarah Dickson, (my intended wife) give, grant, and confirm to her a negro woman named Phillis, and to the lawful issue of the marriage to be begotten: It is furthermore understood and agreed, that in case there shall be no issue of the marriage, then the said negro shall, at the death of her the said Sarah Dickson, return to the said Robert White or to his heirs.” The father Robert White was dead, but the mother was in life, at the commencement of the suits. The suits however, were commenced after advising with counsel, but were subsequently dismissed. No one acquainted with the first maxims of law, would have advised the bringing of these suits, for it is manifest, that as the deed was their only foundation of title, the suits could not be sustained. The guardian then commenced suits under the advise of counsel it is true, but on a statement of facts, on which no one acquainted with the first principles of law, would have advised the bringing of them. Who shall bear the costs and expenses ? A guardian is bound to use due and proper diligence and skill in the management of the estate of his ward, but if he advises with counsel, who from inexperience or any other causé is incapable of giving good counsel on questions governed by the plainest principles of law, and acts under the advise of such Counsel to the injury of the estate, who shall bear the loss ? I think it .should be borne by fire .guardian, and not by the ward, who is incapable of acting for himself. *259 In the employment of counsel, as well as in any other acts, he should be bound to reasonable prudence and diligence, and if he intrusts the management of the estate of his ward to counsel incapable of advising correctly in reference to plain questions of law, he and not the ward must bear the injury that may result from it I see that it is difficult if not impracticable to lay down a general rule, that will guide us in all eases, in determining whether the guardian and not the ward shall bear the expenses of fruitless litigation, commenced under the advice of counsel. The rule would be more uniform and easy of application, to hold, that the advice of counsel should in all cases protect the guardian from the payment of the costs incurred; but to hold that a guardian may commence suit in the name of his ward, without pretence of title, if any counsel however inexperienced shall advise it,would in many cases relieve the guardian from the consequences of his own improper conduct, and throw the burthen of the cost on the ward, although the guardian had not observed ordinary prudence and diligence, and thus the minor would be made to bear the loss resulting from the imprudence and neglect of his guardian. The suits at law were so utterly destitute of foundation, that we think they were not commenced with proper prudence and caution, and the gua/rdicmmustbear the loss.
2. The evidence taken in the chancery suit is not before us, and we can look only to the recitals in the decree of the chancellor, to form an idea of it. His decree shows that there was no evidence, that it was the intention to give the children of the marriage any right or benefit under the deed, and if there was a mistake, or if it was unskilfully drawn and did not express the meaning of the donor, the mistake was prejudicial alone to the mother, and not to the children. A guardian should ascertain the facts of the case before he brings suit. If he heedlessly sues, on a supposed state of facts, without knowing whether he can prove them by any one witness, he must bear the loss. If, however, he brings suit in good faith on a supposed state of facts, and these facts are testified to by one or more witnesses, but other testimony is introduced, which overbances the evidence offered by the guardian, or other facts are established, that negative the right ot his ward to recover, *260 then, the guardian should not be charged with the expenses of the spit — Alexander v, Alexander, 5 Ala. 517. It does not appear that a particle of testimony in support of the right or interest of the wards was introduced; we cannot, therefore, charge the minors with the costs, for the guardian was guilty of neglect in commencing suit, without knowing that he could introduce some proof in support of the title of his ward, and he should not be allowed to visit the consequences of his own neglect on his ward.
3. The Orphans’ Court, in the exercise of its jurisdiction' in reference to estates of decedents, has the power to summon a jury in cases of .contested wills; also, by the act of 1843, in cases of insolvent estates. In all other cases, it is the duty of the court to determine th,c facts and decide the cause, without the intervention of a jury, unless in the progress of the trial it becomes necessary to ascertain some particular fact, or facts, and the testimony in relation to those facts is so conflicting as to create doubts tn the mind of the court how they should be decided. In such a case, the court may impannel a jury to determine such facts. Willis’ Adm’r. v. Willis’ Distributees, 9 Ala. 333; 11 Ala. 1027. In such a case, however, the jury is impanpelled tp try and ascertain the facts .only, in the same manner as an issue out of the Court of Chancery is tried, and by their verdict they inform the court of the truth of the particular fact or facts submitted to their determination, But before the court should impannel a jury to try any fact, except in the cases of contested wills and insolvent estates, it should appear that it was necessary to ascertain those facts, and that the testimony rendered it doubtful how they should b.e determined. In the case at bar, it does not appear from the record that it was necessary to ascertain any fact by the verdict of a jury, for no fact is rendered doubtful from the evidence, nor does it appear that any particular fact was submitted to the jury. It was therefore unnecessary to impannel a jury, and their veiv diet, which seems to have been rendered on the merits of the whole cause, cannot establish the right of the guardian in opposition to the law and the evidence submitted to the com’t, It was the duty of the court to determine the whole question on the evidence submitted, and it cannot shift this responsibility irom itself upon a jury. When a jury is impann.elled to *261 try a doubtful fact, they act in aid of the court. They inform the court by their verdict of the truth of the particular facts submitted for their determination, and which are necessary to be ascertained in the progress of the cause. We do not see that there was any necessity for impannelling a jury in this case. If, however, the Orphans’ Court should improperly im-pannel a jury to try the whole case, or any particular fact, but the final decree should be in accordance with the law and the right of the case, it could not be reversed because a jury was unnecessarily impannelled.
We think the Orphans’ Court erred in allowing the guardian his costs in the suits commenced by him in the name of his ward, and the decree must therefore be reversed, and the cause remanded,