Milam, adm'r, v. Ragland.

## MILAM, Adm'r, *vs.* RAGLAND.

1. The appellate court will not reverse a decree of the Probate Court, on account of the misdirections of the judge to the jury, upon the trial of an issue of fact, in cases where the awarding of such issue is a matter of discretion in the court, when the verdict is in conformity with the evidence, and the final decree, based upon the verdict, is the same that it should have been without it.

2. When the testator is bound to protect his executor, or administrator, from all liability on a note, the executor, or administrator will be allowed to retain, out of the assets which come into his hands, the amount which he has paid on the note.

3. When a testator a short time before his death, in the presence of his executor, or administrator, hands money to a third person to be taken care of, and at his death there is no money on hand, it is the duty of the executor or administrator to show what has become of

it, and in the absence of any explanation on his part, he will be charged with the amount, on final settlement.

ERROR to the Probate Court of Talladega.

RAGLAND, as administrator in chief, *cum testamento annexo*, of James W. Milam, deceased, was cited by Jarvis J. Milam, the succeeding administrator, to appear and settle his administration on said estate. On the settlement, Ragland claimed a credit of $849 55, and interest thereon, for money paid by him to the Huntsville Bank, on a note signed by said James W. Milam, one William King, and said Ragland, (in the order of their names.) A jury was empannelled to try the issue made up between the parties, whether Ragland should be allowed to retain the whole amount thus paid by him, or a moiety only, and a bill of exceptions, which was taken on the trial, sets out the evidence which was before the jury. From this it appears, that the note was drawn for King's benefit; that Ragland had refused to become King's security, and had signed the note after it had been drawn and signed by Milam and King; and Milam's declarations were also proved, that he considered the debt his own, if not paid by King, and that he would not hold Ragland liable for any part of it, because there were matters between himself and King that Ragland knew nothing about. The Court charged the jury, that " if they believed from the evidence, that Milam said he would not hold Ragland liable on the note, because there were matters between him and King that Ragland knew nothing about, and that declaration was true, then, they would be authorized to find for Ragland," to which charge plaintiff excepted. The jury allowed Ragland a credit for the whole amount, and the court decreed accordingly.

It was also proved to the court on the settlement, that a day or two before Milam's death, Ragland handed him $100, which he immediately gave to Mr. or Mrs. Wilson, who lived with him, to put away. Ragland did not return any money on hand at testator's death, nor did he account for it on settlement. The court refused to charge him with it, to which also the plaintiff excepted.

The instructions given to the jury, and the refusal to charge Ragland with said sum of $100, are now assigned as error.

Milam, adm'r, v. Ragland.

S. F. Rice, for plaintiff in error.

J. T. Morgan, and White & Parsons, *contra*.

DARGAN, C. J.—It is the duty of the Court of Probate to summon a jury in cases of contested wills, also in cases of insolvent estates, if required. But in all other cases the court should determine the facts without a jury, unless it should become necessary in the progress of a cause to ascertain some particular fact, and the testimony in relation thereto is so conflicting that doubts are created in the mind of the court how it should be decided.    In such a case the court may, in the exercise of its discretion, empannel a jury to ascertain the truth of the fact.—Savage v. Dickerson, 16 Ala. 257.    The awarding of an issue in such a case, like an issue from the court of chancery, is a matter of discretion, and the verdict is to satisfy the court of the truth of the facts submitted to the determination of the jury, and should the court not be satisfied with the verdict, it may be disregarded, and a final decree rendered according to the rights of the parties, as manifested by the whole evidence in the cause.—Danl. Ch. Prac. 1292, note; 8 Ves. 536; 2 Paige, 488.

In all cases where the awarding of the issue is matter of discretion with the court, and not matter of legal right in either of the parties litigant, should the final decree be in accordance with the justice of the case as shown by the proof, we would not reverse it because of the instructions of the court to the jury; for the decree being as it should have been, it must be affirmed without regard to the verdict.    This, however, is to be understood to apply to those cases only where it is a matter of discretion with the court, whether an issue of fact shall be awarded or not, and further to those cases where the evidence justifies the decree; for we will not say that we would refuse to reverse a decree when the Probate Court misdirected the jury and their verdict was not supported by the evidence.    All we intend to decide is this, that we will not reverse a decree for the misdirections of the judge to the jury upon a trial of an issue of fact, when their verdict is in conformity with the evidence, and the final decree based upon the verdict is the same that it should have been *without it*.    We think the evidence in this case was abundant to show that the testator was bound to protect Ragland (*the executor*) from all liability upon the note of King, and consequently

there was no error in allowing him to retain out of the assets that came to his hands the amount of this note, which he had paid. This conclusion we attain from the evidence contained in the record, and as the verdict accords with the evidence, it is unnecessary to examine into the propriety of the instructions given by the court to the jury upon the trial of the issue.

It was proved that a day or two before the testator's death, Ragland handed to him one hundred dollars, and the testator gave it to Mr. or Mrs. Wilson, who lived with him, to put away. The executor has never accounted for this sum, nor has he returned any money on hand at the death of the testator. What became of it? We think the executor should answer this question, for he knew that the money was handed to Wilson a short time before the testator's death, and if no money was found at his death, it is but reasonable to presume that Wilson retained it in his possession for the testator, and no one having called upon him for it, the money is lost to the estate. If this presumption be true, and the evidence certainly warrants it, the loss is the result of the executor's neglect, and he must bear it. If a testator a short time before his death hands money to a third person to be taken care of, and at his death there is no money on hand, it is certainly the duty of the executor to call on such person and ascertain what has become of it, for *prima facie*, he still retains the possession of it, and the executor alone has the right to inquire into the matter and demand the money, if it has not been returned to the testator in his life-time; but the executor in the case before us, although he knew the money was handed to Mr. or Mrs. Wilson, has made no inquiry respecting it, nor has he returned any money on hand at the death of the testator. The presumption therefore is, that it is lost to the estate without any effort on the part of the executor to recover it, and without any explanation or reason why he did not recover it, or *attempt at least* to do it. Under such circumstances, we are constrained to hold, that the loss is the result of the executor's neglect, and he must be charged with it. The Court of Probate erred in refusing to charge the executor with this sum and interest thereon, under the proof contained in this record. For this error the decree must be reversed and the cause remanded.