## MILAM vs. RAGLAND.

1. On final settlement of an administrator's accounts, he was held entitled to a credit for the entire amount paid by him on a note, (which was shown to have been executed for the benefit of one K., by the intestate, said K. and himself, as joint makers,) on proof of the intestate's repeated declarations "that there were matters between him and K., in relation to the note, of which R. (the administrator) knew nothing, and which made it his (intestate's) duty to protect R.," although there was also evidence of his own declarations that he had signed the note as co-surety with his intestate, and considered himself equally bound for its payment.

2. An administrator in chief, on settlement of his accounts with the succeeding administrator de bonis non, cannot be charged with a sum of money which is shown to have been deposited by the intestate, a short time before his death, in the hands of a bailee for safe-keeping, and to have been paid over by the bailee to the administrator de bonis non himself.

APPEAL from the Court of Probate of Talladega.

ON the final settlement by the appellee of his administration on the estate of James W. Milam, deceased, to which he was cited by the appellant, who succeeded him as administrator de bonis non, the court allowed him a credit for $849 55, and interest thereon, paid by him to the Huntsville Bank, on a note signed by said James W. Milam, one William King, and himself, as joint makers, and refused to charge him with the sum of $100, as cash on hand at the testator's death; and these rulings of the court are now assigned for error. The evidence in relation to these two items, so far as the present record differs from the previous report of the case (19 Ala. 86), is set out at sufficient length in the opinion of the court.

SAML. F. RICE and T. W. JONES, for the appellant.

JNO. T. MORGAN, contra.

LIGON, J.—When this case was here at a previous term (10 Ala. 618), it was held, that Ragland was entitled to retain out of the funds of the estate of Milam, in his hands as administrator, the entire sum paid by him (Ragland) on the note due to the Branch Bank at Huntsville; and when it was again here (19 Ala. 85), it was again held that he was entitled to do so.

1. It is contended, however, that the facts of the case, in relation to this item in his account as administrator, as presented by the present record, are very different from those in the records on which the decisions referred to were made, and will fully authorize a different conclusion. It is true, the testimony of the witnesses Howell and Ogletree discloses facts which do not appear to have been heretofore considered by this court. The former of these witnesses deposes, that Ragland told him, in the summer of 1845, that when the note to the Huntsville Bank was about to be made, King came to him, to get his name as surety for $1000, and that he refused; King then told him there would be no danger, as he could get another good surety on the note; Ragland asked him who it would be, when he replied, "James W. Milam"; whereupon Ragland promised King, that if he (King) could get Milam, he (Ragland) would go on the note. In the conversation with the witness, Ragland stated, that he made this promise to King, because Milam had said he would not be surety for any person; but that King went off and brought back a note for $1000, with Milam's name first upon it. Ragland further said to witness, that Milam had put his name first on the note to save his (Milam's) word, or he (Ragland) supposed Milam had done it to save his word (witness could not say which of these expressions was used), and that it was a lucky thing for him (Ragland) that Milam had put his name first. Ogletree testified, that while Ragland was administrator, witness asked him if Milam's estate would be an easy one to settle; to which Ragland replied, that it would, but for the fact that Milam had unfortunately loaned his name to King for $1000 in the Huntsville Bank; that properly speak-

ing, he (Ragland) and Milam were King's sureties, and he was afraid they would have it to pay.

In our opinion, this proof does not materially change the aspect of the case from what it was when here on both occasions heretofore. The point on which it seems mainly to have turned—that is, the repeated declarations of the intestate that there were matters between him and King in relation to the note, of which Ragland knew nothing, which made it his (Milam's) duty to protect Ragland—remains unexplained by this testimony, and leaves this liability still resting upon him. Even if we regard Milam and Ragland as sureties for King, yet it is competent for one surety to make such arrangements with the principal, as will exempt his co-surety from liability to him for contribution, if he pays the whole debt, or will render him liable to such co-surety for the whole amount, if the latter should pay the debt. It may be, that when Ragland had refused to become surety for King, the latter, when he went to Milam, made such arrangements with him as to indemnify him against loss as to the whole debt, or as to induce him to take upon himself the primary liability, as between himself and his co-surety, Ragland. The repeated declarations of Milam, that he was bound to protect Ragland, and that so long as he was able to pay Ragland should not pay anything on this note, can be accounted for on no other hypothesis. There is no evidence that these declarations were made under any mistake of either fact or law, and in the absence of such testimony we are not authorized to infer that such was the case.

We are of opinion, therefore, that the Probate Court did not err in refusing to charge Ragland with one half the debt due to the Branch Bank at Huntsville, and in allowing him credit for the sum paid by him on that debt, with interest thereon until the settlement.

The only other error assigned relates to the refusal of the Probate Court to charge Ragland with the sum of $100 cash on hand at the death of the intestate. When this case was last here (19 Ala. 85), we held, that the proof then presented by the record was not sufficient to discharge him from liability to account for it. The proof in this record shows that it was placed in the hands of the witness, Wilson, by the intestate,

for safe-keeping ; and he testifies that, in a day or two after the death of James W. Milam, witness handed the money over to Jarvis J. Milam, the present administrator *de bonis non.* We do not think that, in a settlement with the administrator *de bonis non,* who has the disputed fund in his possession, and, from all that appears, has so held it since the death of the intestate, he should be allowed to recover it from the administrator in chief, who, in truth, never possessed himself of it during his administration. If this fund were in the hands of one who was a stranger to the administration, and who was able to pay it, the result might be very different ; but as it is traced to the hands of the present administrator *de bonis non,* Ragland has shown enough to exempt him from further accounting for it with him.

Let the decree of the Probate Court be affirmed.

CHILTON, C. J., not sitting.