# TAYLOR and WIFE vs. KILGORE.

[BILL IN EQUITY BY GUARDIAN AGAINST WARD FOR REIMBURSEMENT.]

1. *When guardian is entitled to reimbursement for expenses of unsuccessful litigation.*
A guardian who, in the institution of a suit in the name and for the benefit of his ward, acts in good faith and on reasonable grounds, is entitled to reimbursement of the costs and expenses, notwithstanding his failure in the suit.

2. *Allowance of solicitor's fees.*—A fee of $500, paid by the guardian to the solicitor by whom the suit in equity was conducted, held a proper item for reimbursement, on proof that the fee was reasonable, and that the solicitor was a man of good professional reputation; the other circumstances in the case being deemed sufficient to show that, by the contract of employment, his fee was not made dependent on the success of the suit.

3. *Costs of amendment allowed.*—Where it appears that the guardian had employed competent counsel, he is entitled to reimbursement of the costs imposed on him, as the terms on which an amendment of his bill was allowed.

4. *When statute of limitations begins to run between guardian and ward.*—A right of action does not accrue to a guardian against his ward, for reimbursement of the costs and expenses attendant on the unsuccessful prosecution of a suit, until the termination of the guardianship; and the ward's removal to another State does not affect the principle.

5. *Appointment of foreign guardian.*—The appointment of a guardian for an infant, on the petition of its mother and sole surviving parent, by the court of equity of a foreign State, in which the domicile of the infant and the greater portion of its property then were, cannot be held invalid or irregular, when collaterally attacked, because its mother was then a married woman, and the infant, who was not of an age to select its own guardian, was not made a party to the proceeding.

6. *Authentication of foreign transcript.*—A certificate, appended to a transcript from the records of the court of equity in South Carolina, in these words: "I, J. J., one of the chancellors of the State of said State, and, in turn, presiding chancellor for said district, do hereby certify," &c., appears on its face to be made by the proper person, and conforms to the requisitions of the act of congress.

7. *Exceptions to master's report.*—Under an exception to the master's report, on account of the allowance of an item in the statement of an account, a party cannot avail himself of the objection that secondary evidence was admitted without the proper predicate : an objection should be made to the testimony when offered, and an exception taken to the overruling of the objection.

8. *Re-statement of account.*—If the chancellor, in ordering a re-statement of an account by the master, by mistake directs him to allow one item and reject another, while the opinion shows that he intended the latter item to be allowed and the former rejected, it is nevertheless the duty of the master to follow the decree, and not the opinion.

9. *Costs of procuring attendance of witness.*—The amount paid by the guardian, in procuring the personal attendance of a female witness, who resided more than one hundred miles from the place where the suit was pending, is not a proper item for reimbursement, in the absence of proof that the law authorized that method of procuring testimony, or that peculiar circumstances required it.

10. *When judgment against husband and wife is proper.*—In a chancery suit against husband and wife, by the wife's late guardian, for reimbursement of the costs and expenses of litigation on her account, if it appears that the husband received property by his wife, exceeding the amount of the plaintiff's demand, the "woman's law" of 1846 (Session Acts 1845–46, p. 25, § 6) authorizes the rendition of a joint decree against him and his wife.

APPEAL from the Chancery Court of Perry.

Heard before the Hon. JAMES B. CLARK.

THE bill in this case was filed on the 22d April, 1848, by Josiah Kilgore, against Samuel H. Taylor and wife, and sought to recover from the defendants reimbursement for costs and expenses incurred by the complainant as guardian of Mrs. Taylor, then Miss Ramsey, in the unsuccessful prosecution of a chancery suit in South Carolina. The facts out of which the case arose, as shown by the bill, answer and proof, are briefly these : Mrs. Taylor's father, John Ramsey, died in South Carolina, some time prior to 1832, bequeathing all his property, real and personal, to his widow for life, with remainder to his only child, then an infant. In 1832, the widow married John H. Joyce, from whom she separated in 1834. When on the eve of this marriage, she executed a deed, conveying all her interest in the estate of her late husband to her daughter; which deed appears to have been executed without the knowledge or consent of her intended husband. In July, 1836, on the application of Mrs. Joyce, who was still living separate and apart from her husband, the com-

plainant was appointed guardian of Miss Ramsey by the court of equity of Greenville district, South Carolina, and soon after instituted a suit in equity against the said John H. Joyce, for the purpose of establishing the said conveyance, and obtaining the possession of the property. At the time this suit was instituted, the complainant knew that Joyce contested the validity of the deed. The bill was filed originally in the name of the complainant, as guardian of Miss Ramsey; but an amendment was afterwards allowed, on payment of costs, and the suit was prosecuted in the name of the ward. An issue at law was directed, to test the validity of the deed; and the cause was finally decided against the complainant, both in the chancery court, and in the court of appeals. The costs and expenses incurred by the complainant in that suit, are the foundation of the present suit.

The defendant filed a joint answer; insisting that the complainant's letters of guardianship were void, for want of jurisdiction in the court by which they were issued, and that the suit in South Carolina was instituted under circumstances which deprived the complainant of all claim to reimbursement; pleading the statute of limitations; and demurring to the bill, for want of equity.

On final hearing, on pleadings and proof, the chancellor rendered a decree for the complainant, and ordered a reference of the matters of account to the master. The chancellor's decree, together with his rulings on the testimony, and on the exceptions to the master's report, which require no particular notice, is now assigned as error.

I. W. GARROTT, for the appellants.

J. R. JOHN, contra.

WALKER, J.—The authorities cited authorize us to assume in the outset of this opinion, that if the complainant, as the guardian of Miss Ramsey, acted in good faith, and upon reasonable ground, in the institution of the suit in equity in Greenville district, South Carolina, he is entitled to reimbursement of the costs and expenses of the litigation——Apt v. Bean, 8 N. Hamp. 15; Mathes v.

Bennett, 1 Foster, 204; In the matter of Hopper, 5 Paige, 289; Pearson v. Darrington, 32 Ala. 227; Savage v. Dickson, 16 Ala. 257; Alexander v. Alexander, 5 Ala. 517; Bendall v. Bendall, 24 Ala. 295; Pinckard v. Pinckard, 24 Ala. 250. A guardian, who acts at his peril in omitting suits in behalf of his ward, and who must, of necessity, be allowed some discretion as to the propriety of settling by judicial decision questions involving the rights of his ward, should never, when he acts *bona fide*, be denied reimbursement in consequence of a failure in the litigation, unless he has acted with such heedlessness as to amount to misconduct. It was not designed in Savage v. Dickson to prescribe a rule variant from the principle above stated.

In the institution of the suit in South Carolina, the guardian had no conceivable motive or interest to induce him to act *mala fide*. In the institution of the suit, he acted under the advice of counsel learned in the law, and of unquestioned integrity, who appears to have been fully informed of all facts, pertaining to the case, which were known to the complainant. There is, therefore, no just reason for the imputation of bad faith.

The main question in the suit in Greenville district, South Carolina, was, whether certain deeds, made by Mrs. Joyce pending an engagement to marry, were fraudulent as to the husband, whom she married in a short time in pursuance to that engagement. Those deeds were valid, if, under the law as it existed in South Carolina, a voluntary conveyance by a woman contemplating marriage, without the knowledge of the intended husband, would be valid, because it made provision for her only child; or if in fact the deeds were made with the knowledge or consent of the intended husband. How far a woman, pending a contract to marry, may go in making provision for the child of a former marriage out of her estate, without the knowledge of the intended husband, is a question as to which there is a conflict of authority.—St. George v. Wake, 1 Myl. & K. 610; 1 Story's Equity, § 273; De Mandeville v. Crompton, 1 Ves. & B. 354; Hunt v. Matthews, 1 Vernon, 408. There are expressions in the books,

Taylor and Wife v. Kilgore.

as will be seen by reference to the authorities cited, which concede great potency to the fact that the conveyance is made to a child, in proving the *bona fides* of the conveyance. The court of appeals in South Carolina had, before the commencement of the suit in that State, intimated by remarks in its decisions, that the case where the deed is made to provide for children constituted an exception to the general rule, that the voluntary deed of a woman conveying away her property in contemplation of marriage without the knowledge of the intended husband was fraudulent. It appears from the decision by the court of appeals of South Carolina, given in evidence, that that court in two cases had added, "unless it be to provide for children," to a statement of the general principle, which avoids voluntary conveyances pending the treaty of marriage without the husband's knowledge. It is true, the apparent exception of the case of a conveyance to children may have been an incidental remark, scarcely deserving to be characterized as a *dictum;* yet it was an indication of the opinion of the appellate court, which, though not binding upon that tribunal, might well be regarded by a lawyer, in determining the propriety of suing. Especially was it a proper subject of consideration when, as remarked by Lord Brougham, there was so "little positive decision" upon the point, and some conflict of authority. To this it may be added, that the South Carolina court of appeals evidently regarded, and in effect decided, that the state of the law in reference to the point was such as to induce that probability of success, which justified the institution of the suit, involving so large an interest. The court says in its opinion in the case, alleged to have been improperly brought by the guardian : "It was certainly no violation of the duty of a guardian to obtain the judgment of the court on an instrument, in which his ward had *apparently* so deep an interest; and it would be hard and unusual to burden him with the costs. By paying costs out of the *corpus* of the property, they will be borne by the tenant for life, and the complainant entitled in remainder, according to their respective interests. This is ordered accordingly, &c."

This we regard as an adjudication in favor of the propriety of the suit, which is entitled to great weight, as it comes from the court which best knew the state of the law in reference to which the guardian acted.

In support of the conclusion to which the foregoing view of the law persuades us, it is to be observed, that there appears to have been some reaason for believing that the husband's knowledge of the deeds before the marriage could be proved. The record discloses, that the chancellor from the record entertained sufficient doubt upon the question to order an issue for its trial by a jury. The chancellor says : " On this point a good deal of testimony has been offered ; and if it were necessary, I could solve it, but not to my entire satisfaction." Besides, the guardian was assured by Mrs. Joyce, who certainly knew, that her husband consented that she might make such conveyance; and it is proved in this case that she actually produced a witness who so testified. It is true, that Mr. Joyce informed the guardian before the suit was brought, that he had no knowledge of the making of the deed; but such representation by Joyce would have been no protection to the guardian for the failure to· sue, and he was not bound to act upon it.

There are other points of view in which the propriety of bringing the suit is argued; but we are content to rest our conclusion in favor of the complainant upon the reasons adduced by us, without considering the others advanced in argument.

[2.] It is contended for the appellants, that the guardian wrongfully paid the fee of B. F. Perry, one of the solicitors engaged in the prosecution of the suit in equity, because there was a contract with him that his fee should be conditioned upon success in the case. The complainant proves by Mr. Perry, that he made no such contract; that such a contract would have been inconsistent with his uniform practice, and would have been unreasonable when considered in reference to the labor bestowed and the value of the interests involved. The testimony of Mr. P. is in some degree fortified by evidence that his fee was reasonable, and that his professional reputation was

good, as well as by the improbability of the complainant's paying under the circumstances money not due.

The two witnesses supposed to contradict Mr. Perry's statement are Mrs. Joyce and Mr. Jenkins. These witnesses gave their evidence thirteen years after the transaction of which they speak. Mrs. Joyce acknowledges her deficiency of memory as to other matters; and, indeed, the frailty of her memory is fully attested by the difference between her answer to the bill in equity, and her deposition, in reference to the material matter of her husband's consent that she should convey her property before her marriage. Besides, it is fairly inferrible from the deposition of Mrs. J., that she was not present at the time when the alleged contract was made, and therefore cannot assert that it was made from her own knowledge. If this mooted question of fact is decided for the appellants, it must be upon the ground that the testimony of Jenkins and Perry is in irreconcilable conflict, and that superior credit is to be given to Jenkins. The time of the alleged contract was before the appointment of the guardian, and when Mrs. Joyce regarded herself as the guardian by virtue of her first husband's will., Jenkins says, he went for Mrs. Joyce to see Perry and make the contract with him. The entire communication between them was verbal. Jenkins had no interest in the matter, and there is no reason assigned why the terms of the contract should be impressed with any peculiar force upon his memory. It would be remarkably strange that a lawyer, proved to be a man of professional competency, should, in advance of the appointment of the guardian, by whom the suit was to be brought, make a binding contract with one not only unauthorized to bind the anticipated guardian, but incompetent from coverture to bind herself. Jenkins does not apply the contract with distinctness to the suit. It is much more reasonable to conclude, that after the lapse of so long a time, Jenkins has applied a conversation in reference to some suit contemplated by Mrs. Joyce, to the suit afterwards brought by the guardian, or that from frailty of memory, or any other cause, he has misrepresented the facts, than to conclude, that a

contract, unreasonable and improbable in itself, not providing a compensation adapted to the case, and inconsistent with the uniform practice of the party, was made; and that Perry has denied it falsely, either from design or forgetfulness; and that the guardian has paid it, being under no obligation to do so, when his interest was opposed to such payment.

[3.] The complainant was entitled to reimbursement of the costs imposed upon him, as the terms upon which an amendment of his bill was allowed. He had employed competent counsel, and the error was in no wise attributable to him.

[4.] The statute of limitations cannot avail the defendants. The right of action did not accrue, until the termination of the guardianship within less than six years before suit brought.—Davis v. Ford, 7 Hammond, (Ohio,) 441. The removal of the ward from the State of South Carolina could not authorize the guardian to sue before the relation of guardian and ward was dissolved. The right of suit cannot be dependent on the place of the ward's residence.

[5.] We are led by the evidence to the conclusion, that both the domicile of the ward and major portion of the estate were in South Carolina at the time of the appointment of the guardian; and that, therefore, the appointment of a guardian appertained to the jurisdiction of the tribunals of that State. The chancery court had, at common law, original jurisdiction over the appointment of guardians for infants; and that jurisdiction was exercised in a summary manner, upon petition.—3 Dan. Ch. Pl. and Pr. 2076 to 2079. The petition here was filed by the mother, the only surviving parent of the infant; the infant was not of an age to select her guardian, and the proceedings do not seem to be even irregular. We can not intend that the court of equity of South Carolina did not have the jurisdiction which it exercised, especially as it was a jurisdiction which originally appertained to courts of equity; and it is no objection to the validity of the appointment that the infant was not made a party. The jurisdiction over the guardianship having attached,

the removal of the ward and her property from the State could not divest that jurisdiction.

[6.] There was no error in overruling the objection to the chancellor's certificate, verifying the transcript of the record of the chancery court of Greenville district, South Carolina. The certificate of the chancellor commences as follows: "I, Job Johnson, one of the chancellors of the State of the said State, and *in turn presiding chancellor for Greenville district*," &c. We understand the chancellor thus to assert, that he was one of the chancellors of the State, and was *in his* turn the presiding chancellor of the particular district at the date of his certificate. He was, therefore, the proper person to make the certificate. Where the chancellors are commissioned for the State at large, and not for any particular portion of the State, and where they preside *in turn*, it is a strict compliance with the act of congress for the chancellor who *in his turn* is presiding to make the certificate.—See the case of Stephenson v. Bannister, 3 Bibb, 369; Greenleaf on Evidence, 551, § 506.

It is unnecessary for us to consider the chancellor's rulings against the appellant upon the complainant's objections to testimony, because the testimony excluded could not have the slightest effect upon the result of the case.

It remains for us to pass upon the decree of the court below so far it overrules the defendants' exceptions to the register's report.

[7.] The first exception was properly overruled. The items mentioned in the exception were adequately supported by the testimony. If the testimony was objectionable, because it proved by parol the contents of a receipt or other paper without sufficiently accounting for the absence of the original, it was ground of objection to the testimony; and the improper overruling of the objection might have been made the predicate of an exception to the report. The party cannot, under an exception to the allowance of the item, avail himself of the objection that secondary evidence was admitted without the proper predicate.

[8.] There is no proof either of the payment to Holan-

quist of the tuition, or of the reasonableness of the amount charged; and the two items 4 and 11 were not established. The decree sustains the second exception; but the opinion discloses, that it was done by mistake. The 3d was intended to be sustained. The register deducted items 7 and 18, which were the subject of the 3d exception, from the account. The defendants therefore have no ground of complaint as far as those two items were concerned. As to items 4 and 11, embraced in exception 2, the register was instructed by the decree, upon the re-statement of the account, to reject them; and for his error in not doing so, the defendant should have objected to the account as re-stated. It was his duty to have followed the decree, and not the opinion. Exception 2 was sustained, and therefore the defendant cannot complain so far as it is concerned. Exception 3 was not sustained by the chancellor; but the defendant got the benefit of the exception in the exclusion of the items objected to through the mistake of the register in following the opinion instead of the decree.

The account of Powell was proved by the depositions to have been correct, and to have been paid by complainant, and the articles in the account appear to have been suitable and proper for the young lady at the time; and we will not, in the absence of evidence, presume the contrary. Exceptions 6 and 8 applied to the costs imposed as the terms of the amendment to the bill in equity in South Carolina, and the solicitor's fees; and we have already passed upon them.

[9.] The 7th exception is to the allowance of items 33, 34, and 36, which were for payments made to John W. Fowler and P. T. Fowler, for bringing a female a distance of a hundred miles to testify in the South Carolina equity suit. We know of no presumption of law, which can sustain those charges. The necessity of sending after the witness is not proved. We cannot presume that the law of South Carolina imposed such duty upon a party desiring the testimony of a witness. The presumption is, that the attendance of the witness could be coerced by subpœna. If there existed any peculiar circumstances,

rendering it necessary or expedient to send for the witness, or if any law of South Carolina devolved such duty upon the party desiring the testimony, it should have been proved. The chancellor erred in overruling the objection to these items; and the decree of the court below must for that error be reversed, and a decree must be here rendered for the amount of the original decree, less $9792, the aggregate of those items and interest upon them; and the decree here rendered must bear interest from the date of the decree in the court below. The appellant must pay the costs of the court below, and the appellee must pay the costs of this court.

[10.] There was no statute before the commencement of this suit, which could make it improper to render judgment against the husband. He received by his wife property largely exceeding the amount of the decree, and, under the act of 31st January, 1846, he would be liable. See Pamphlet Acts of 1845–6, 25, § 6.