# Ashley's Administratrix *v.* Martin & Wife.

## *Final Settlement of Accounts of Deceased Guardian.*

1. *Judicial knowledge of general pecuniary condition of country.* — The courts will take judicial notice of the fact, as a part of the history of the times, that the people of this State were, in 1867, in a condition of very great pecuniary embarrassment and insolvency, and that, in consequence of this state of affairs, it may not have been practicable for a guardian, at that time, to make a safe loan of a large sum of money, without some delay after its receipt.

2. *Guardian's duty and liability in lending out ward's surplus moneys.* — In the discharge of the duty imposed on him by law (Rev. Code, § 2426), to lend out, "if practicable," his ward's surplus moneys in his hands, on bond and mortgage, or on good personal security, a guardian must be allowed a reasonable time after the receipt of the money, and can only be required to exercise his best judgment and discretion under all the circumstances of the particular case; and he cannot be charged with interest on such surplus funds not loaned out, unless he is shown to have been guilty of culpable negligence in not lending them out.

3. *Conclusiveness of annual settlements.* — On final settlement of a guardian's accounts, previous annual or partial settlements made by him "are presumed to be correct, but may be impeached for fraud, or for any arithmetical or other error" (Rev. Code, § 2422); and under this judicial presumption, the annual settlement must stand, and be deemed correct, until successfully impeached for fraud, mistake, or error.

4. *Proof of general pecuniary condition of country, as relevant to question of guardian's diligence or negligence in lending out ward's surplus moneys.* — Where the issue is, whether a guardian has been guilty of culpable negligence in not lending out his ward's surplus moneys in his hands, evidence showing the general pecuniary embarrassment and insolvency of the people of the county in which the guardian then resided, and of the adjacent counties, is relevant and admissible.

5. *Waiver of assignments of error not insisted on.* — An assignment of error will be considered as waived, or abandoned, when it is not pressed in the argument or brief of counsel, and supported by reasoning on general principles of law, or by the citation of adjudged cases, or text-books of recognized authority. It is not enough to say, "All the assignments of error are insisted on, and none are abandoned."

6. *Counsel fees.* — On final settlement of the accounts of a deceased guardian, by his widow as administratrix, she should be allowed reasonable counsel fees for services rendered on the settlement, to be paid out of the ward's estate, when the matters principally contested are all decided against the ward.

7. *Waiver of conversion of ward's funds from currency into gold.* — If a guardian, acting under an order of the probate court, buys gold with currency belonging to his ward's estate; and the ward, after her marriage, receives the gold without objection, she cannot afterwards charge him with the premium paid, as for an unauthorized conversion.

APPEAL from the Probate Court of Conecuh.

In the matter of the final settlement of the accounts of William A. Ashley, deceased, as guardian of Mary Sanford Jones (now the wife of Edmund Martin), by Mrs. M. A. Ashley, his administratrix and widow. Letters of guardianship on the estate of said Mary Sanford Jones were granted to said William A. Ashley, by the probate court of Conecuh county, in the latter part of the year 1865, but the precise time is not shown by the record. On the 27th April, 1867, said guardian received of his · ward's estate, in New Orleans, Louisiana, the sum of $12,000 ; and on the 20th August, 1867, in Mobile, Alabama, the further sum of $10,582.32. These sums he placed on deposit in a bank in Mobile. On the 3d February, 1868, he made a partial settlement of his accounts as guardian, in which he charged himself with these sums as of the dates on which they were received, but not with interest on either of them ; and his accounts, as stated, were audited and allowed by the court. On said partial settlement, the decree recites that the ward was represented by a guardian *ad litem*, who contested the guardian's account ; and that the guardian had received in cash the sum òf $24,006.90, assets belonging to his ward's estate, and had expended the sum of $2,327, leaving a balance in his hands of $21,679.98 ; and it was thereupon ordered and decreed, " that said account be, and the same is hereby, in all things passed and allowed as stated." On the day after this partial settlement (February 4th, 1868), said guardian filed his petition in said probate court, alleging that he had on deposit, in the banks of Mobile, " the sum of ———— dollars, belonging to the estate of his said ward, believing this to be the safest depository of said funds in the absence of any opportunity for a safe and profitable investment of the same ; " and asking that he be allowed " to keep said funds thus on deposit, except such sums as may be necessary to defray the expenses of his said ward." The court rendered a decree on the same day, in accordance with the prayer of the petition ; but it does not appear that the ward had any notice of this application, or was represented by a guardian *ad litem*.

On this final settlement, which was made in July, 1871, the administratrix charged her intestate with the balance ascertained to be in his hands at the time of said partial settlement ; while the ward and her husband contested the correctness of the account as stated, and also the correctness of the decree on

said partial settlement, and contended that the guardian was chargeable with interest on these surplus funds, although he had not loaned them out. On this issue, numerous exceptions (fifteen in all) were reserved by the administratrix to the rulings of the court in refusing to allow questions to be asked or answered, the object of which was declared to be, to show that it was not practicable for the guardian to make a safe loan of these funds at that time. Some of these questions were in the following words, and the others were in similar language: "State whether or not it was safe and practicable, in 1867, and about that time, to lend out money in Conecuh and the adjoining counties." "If you were a money lender at that time, state what was the result of your loans in and about Conecuh county at that time." "What was the condition of the people generally of Conecuh and the adjoining counties, as to solvency, in or about the year 1867?" "Was it practicable, in 1867, or about that time, to lend out $12,000 safely in Conecuh county?" "State, if you know, whether or not there were, during the years 1866 and 1867, many failures among business men and farmers in said county." "State whether or not the period from April 12, 1867, to February 3, 1868, was not a period of general distrust and want of confidence among money holders, or whether, during that time, there were any extraordinary circumstances affecting the loaning of money." The court sustained objections to these and all similar questions, and charged the guardian with interest on said sums of money, from the time he received them respectively; to all of which rulings exceptions were reserved by the administratrix.

On the 2d November, 1868, the guardian filed his petition in said probate court, alleging that his ward had on deposit a considerable sum of money, in United States currency, in specified banks in Mobile, and that, in his opinion, "owing to the unsettled condition of the commercial affairs of the country, and the present low rates at which gold can be purchased, it would be to the interest of his said ward to invest a portion of the currency belonging to her estate in gold;" and he prayed an order of the court, authorizing him to purchase gold with the currency. On the filing of this petition, and on the same day, the court granted an order, authorizing the guardian "to exchange such portion of the currency in his hands, belonging to his ward, for gold, as he may think right and proper, and to the interest of his said ward." Under the authority conferred by this order, the guardian bought $7,838.75 of gold, at $1.35, costing in currency $10,582.32, and deposited the gold in a bank in Mobile. On the final settlement, the ward and her husband asked the court to charge the guardian with the premium paid by him for this gold, on the ground that the conver-

[Ashley's Administratrix *v.* Martin.]

sion of currency into gold was unauthorized. The court refused to charge the guardian with the premium, but charged him with interest on the gold from the time when it was received and deposited by him ; and to this ruling an exception was reserved by each of the parties.

The appeal is sued out by the administratrix, who assigns as error, with other matters which require no special notice, the rulings of the probate court charging interest against the guardian as above stated, and the several rulings on questions of evidence. There is, also, a cross assignment of error by consent, by Martin and wife, on account of the refusal of the court to charge the guardian with the premium paid by him on the purchase of gold.

HERBERT & BUELL, for appellant.

JUDGE & HOLTZCLAW, *contra.*

PETERS, C. J. — This is an appeal from the final decree of the court of probate of Conecuh county, rendered on the final settlement of the guardianship of William A. Ashley as guardian of the estate of Mary Sanford Jones, now Mrs. Martin, the wife of Edmund Martin. The settlement was made by Mrs. M. A. Ashley, the widow and administratrix of the deceased guardian, and she is the party who takes the appeal. Besides some questions as to the competency and admissibility of evidence, which the court below excluded on the motion of the ward and her husband, the main questions raised by the assignment of errors involved an inquiry into the effect of the annual or partial settlements made by the guardian, and his liability to account for interest on the surplus funds of his ward which he has not loaned out, as authorized and required by the statute (Rev. Code, § 2426), but has kept on deposit in bank without interest. Besides these questions, there is a cross assignment of errors by the appellees, which raises the further question of the guardian's liability for a conversion of currency, belonging to his ward's estate, into gold, under the authority conferred by an order of the probate court, granted on the guardian's application.

It seems that no very clear principle can be deduced from decided cases, measuring the liability of a guardian for mistakes committed by him in the management of his ward's estate, in all cases that may occur. When a guardian manages his ward's estate with the same care and judgment that a prudent man would use in the management of his own business, that which most nearly approaches such a principle seems to be, that he must act in good faith, and to the best of his skill and

ability ; and where the time of executing a duty, which the law imposes upon him, is left to his own judgment, he must act without unreasonable delay under the circumstances. Following the spirit of this principle, the Code defines the duty of a guardian in this language : " It is the duty of the guardian, to manage the estate of his ward frugally, and improve it to the best of his skill and ability. He *must, if practicable,* lend out all surplus 'money of the ward on bond and mortgage, or on good personal security ; and if the bond is not renewed annually, require the interest to be paid at the end of each year." Rev. Code, § 2426 ; *Hall* v. *Hall,* 43 Ala. 488, and cases there cited. In this case, under this statute, the question arises, as to the precise time when the guardian's default begins, if he fails to lend out the ward's surplus money in his hands. Does it begin on the day he receives the money, or on some other day ? and on what day, if not on the day the money is received ?

Chancellor Kent, speaking of the guardian's duty to loan the money of the ward in his hands, uses this language : " So, if he neglects to put the ward's money at interest, but negligently and for an unreasonable time suffers it to be idle, or mingles it with his own, the court will charge him with simple interest, and, in case of gross delinquency, with compound interest." 2 Kent, 230, 231. This rests the guardian's liability on his negligence, and it makes this negligence consist in a failure to loan out the ward's money, in a reasonable time after it has been received. And our statute adds, "if it is practicable " to lend out the money in such reasonable time. Now, until this reasonable time has occurred, and the lending of the money, on the terms required by the statute, becomes practicable, the guardian is not in default.

In the first instance, at what time it is reasonable to make the loan, and whether it is practicable or not, are questions left wholly to the judgment of the guardian. He is made the judge of both these facts, by the very terms of the law. Then, if he acts in good faith, and to the best of his skill and ability, is he to be made to suffer for his mistake ? The statute only requires him to do the best he can under the circumstances, and upon his own best judgment. When he has done this, he has fulfilled its requirements, and should be discharged. The general and common condition of the country and its people is a part of its history. This is presumed to be known to courts, and to every one. But if there is doubt about it, books and records and reliable documents may be examined, and witnesses may be called to establish this. If this condition of the country proves to be such that the guardian, as a man of common prudence, thinks it best not to loan out his

ward's money, and he acts without corruption or negligence, he should be allowed to act upon the only judgment that the law has afforded him — that is, on his own judgment. Without notice, the guardian ought not to be led into a snare. It would be leading him into a snare, to make him the sole judge of the proper time, and the proper circumstances, for the performance of a delicate, and often difficult duty, and then hold him responsible for a mistake, without advising ·him, before he accepts the office, that he must suffer for his honest mistakes, as well as for his negligence. He is, to some extent, an officer of the law. He acts under official responsibility, and should be protected by the presumption, that he has done his best. Rev. Code, § 2408 ; 4 Bac. Abr. p. 538, Bouv. ed. ; Broom's Max. 427, 428. He is, also, a trustee appointed by law, and as such is entitled to be protected, if he acts with common prudence, and without corruption or gross negligence. 43 Ala. 488, *supra;* Hill on Trusts, 49 ; also, *Taylor* v. *Kilgore*, 33 Ala. 214, and cases there cited. It would be making the rule too stringent, to require the guardian to lend out the surplus money of his ward on the day he received it, or on the day afterwards. How long he may delay, is a question of diligence and opportunity, of which the court or jury trying the same must judge under all the facts ; but his liability depends upon his culpable negligence.

In this case, there was a partial settlement of the guardianship on February 3, 1868, in which it appears that the guardian was not charged any interest on the moneys of the ward then in his hands. These funds were received as follows, viz. : $12,000 in New Orleans, Louisiana, on April 27, 1867 ; and $10,582.32, in Mobile, Alabama, on August 20, 1867. The sum first above mentioned, the guardian had held in his hands for nine months and five days, and the second, for three months and thirteen days, at the date of the partial or annual settlement. The court knows, as a part of the history of the times, that the people of this State were in a condition of very great pecuniary embarrassment and insolvency ; and that under the then existing condition of the people of the State, it may not have been practicable to have made a safe loan of so large an amount of money as that possessed by the guardian, without some delay after its receipt. On this knowledge, the court of probate at that date, to wit, on February 3, 1868, judicially determined that the delays, above shown, to lend out the ward's funds, did not amount to culpable negligence. This was, then, *primâ facie* correct, and the guardian was properly discharged from accounting for interest on the sums above named, up to that date. The Code declares, that, "Upon the final settlement, the previous annual or partial settlements (of the guardian)

shall be presumed to be correct, but may be impeached for fraud, or for any arithmetical or other error." Rev. Code, § 2422.[1] Under this section, the ward, on the final settlement of the guardian, impeached the partial settlement above referred to; because the guardian had not been charged with interest on the above sums, from the date they were received up to the date of the settlement. The impeachment was sustained, and the guardian was charged with the interest insisted on by the ward. To this action of the court below, the administratrix, who represented the guardian, objected, and her objection was overruled, and she excepted. This is one of the errors she assigns on this appeal. All the evidence is set out in the record; and there is none to sustain such an impeachment. There is no evidence of fraud, no evidence of any arithmetical or other error, and no error of law. The partial settlement should,. therefore, have been left undisturbed. The court, in the attempted correction, on the grounds shown in the record erred. The guardian, on the proofs adduced, should not have been charged with interest, on either of the sums above mentioned, up to the date of the partial settlement. And other sums, in like condition, should be governed by the same rule as to interest.

The same principles will be applied to the charge of interest against the guardian, after the partial settlement on February 3, 1868; if the circumstances and facts remained the same, or about the same as before. It is a fact almost everywhere known, that since the late war, what is called "personal security" for the loan of money, in most parts of this State, which would be a competent security, has been very difficult to obtain, if at all obtainable, on obligations which involved the liability to pay compound interest, as such obligations to a guardian for loaned money do. Rev. Code, § 2427. And a loan on mortgage on real estate may, in many instances, become a mere investment of the ward's moneys in real estate, where the mortgagor might become unable to pay, except by a sale of the land, and a purchase for the ward, in order to secure the debt. In such a case, the guardian is made the judge, under his power to manage the ward's estate, what may be the best to be done. The testimony shows that the ward was a female, very near, or quite of marriageable age. If she should marry, then she would need her money much more than choses in action, or notes for loaned money, even though such notes might be secured by mortgages on lands, or other property of equal

---

[1] The presumption here referred to is a judicial presumption, that the court in the partial or annual settlement has acted properly; and its judgment must stand, until successfully impeached for some one or more of the reasons named in the Code. Best on Pres. p. 29.

value with the money loaned. These are considerations which might incline the guardian to postpone the lending out of the ward's money for a reasonable time. If, from all the circumstances, it appears that the guardian acted upon his best judgment, and without culpable negligence, he should not be charged with the interest, which he failed to accumulate, though, under different circumstances, the delay would appear to have been unreasonable. Mere delay was the only evidence of consequence, which was offered to the court below, to fix the liability for interest on the unloaned money of the ward in the guardian's hands. This was not enough, under the circumstances of the country and the people, to fix negligence on the guardian ; and without negligence, he should not be charged. In this, the court again erred.

The objections urged in the assignments of error, against the action of the court below in refusing to let in evidence of the general insolvency and pecuniary inability of the people of Conecuh and the adjacent counties in this State, are properly taken. This was competent proof on the question of diligence. If the people of the county, and of the adjacent counties, were unable to make the loans secure, then no diligence could have been successful. To effect a safe lending out of the ward's money, would not have been "practicable." This, in the very language of the statute, would have excused the guardian. The court. therefore, erred in refusing to let in so much of the rejected evidence as established, or tended to establish, the insolvent condition of the people of Conecuh county, and the counties adjacent thereto. It is true that the guardian may, and should, if practicable, lend out the surplus money of his ward, anywhere in the State, upon the conditions required by the statute. But, if he has to go abroad to hunt up borrowers, he should be allowed ample time to find them, and to make inquiry as to the safety and practicability of the transaction. In no case should he be charged, if it appears that he has acted as a prudent man would about his own affairs, and without culpable negligence.

It may be proper here to say, that the brief of the learned counsel for the appellant does not furnish any authorities from decided cases, or principles laid down in books of credit in the profession, nor reasons of counsel themselves, in support of the errors assigned upon the rejection of evidence offered on behalf of appellant in the court below, and on the various motions on the conduct of the examination of the appellant's witnesses in that court, which were decided against the appellant, and excepted to. When this is the case, it is not enough to say in argument at the bar, or in the brief of learned counsel, that such and such errors are "*insisted on and not abandoned.*"

They will be considered by this court as abandoned, unless argument of counsel at the bar, or in the brief, on authority of decided cases, or principles from books, are adduced in their support. It affords the court no assistance to say, such and such an "assignment of error is insisted on." It must be insisted on in the proper way; that is, by argument pointing out the purpose and validity of the assignment, or by brief of authorities from decided cases for like purpose, or principles from books of admitted credit.

The appellant should have been allowed credit for reasonable counsel fees; the more so, because she is a woman, who, by habit and education, is not to be presumed to be able to manage such affairs prudently, without such assistance. *Neilson* v. *Cook*, 40 Ala. 498; *Modawell* v. *Holmes*, 40 Ala. 392; *Taylor* v. *Kilgore*, 33 Ala. 214. The difficulties of her situation are very much increased by the death of the guardian, who was a competent witness for himself. 47 Ala. 315. Her slight knowledge of such affairs, and of the law that governs her rights, renders it almost indispensable in such a case to be guided and protected by the aid of able and learned counsel. Under the facts of this case, the court erred in refusing fees for such a purpose. See cases *supra*.

For the reasons above stated, the judgment of the court below from which this appeal has been taken is reversed, and the cause is remanded for a new trial. The appellees will pay the costs of this appeal in this court and in the court below.

I now turn to the consideration of the cross-assignment of errors made by the appellees, under the 34th rule of practice in this court. 39 Ala. 4. This rule is in these words : " The appellee can only assign errors upon the record brought up by the appellant by consent in writing, indorsed on the transcript, and a joinder by the appellant in such assignment of errors. When such assent and joinder are made, the clerk shall docket the case, as if an appeal had been taken by such appellee; and the transcript shall be a part of the record in the case wherein errors are thus assigned by the appellee, as well as in the original case; and the case in which the appellee thus assigns errors shall, in all respects, be regarded as a case on appeal taken by him." This rule was adopted at June term, 1867. In this case, the preliminary steps required by this rule have been properly taken.

The record shows that on the 2d day of November, 1868, the guardian applied by petition to the honorable judge of probate of the county of Conecuh, for an order to authorize him to make an investment of a certain amount of United States currency, commonly called "greenbacks," in gold, at the

[Wood *v*. Farnell.]

then " low rates at which gold " could be purchased. An order was granted on this petition, but the proceeding seems to have been altogether *ex parte*. The ward had no notice of the proceeding, and no guardian *ad litem* was appointed to defend her interests. Under this order, the guardian purchased with the ward's money in currency, the sum of $7,497.66 in gold. This cost in "greenbacks" $1.32 for $1 in gold. On the trial below, the ward and her husband moved the court to charge the guardian with the sum thus expended in greenbacks, above the sum named in gold. It does not appear particularly what this precise sum was, but it was ascertainable by calculation. It appeared that the guardian had not mingled the moneys of his ward with his own, but had the same kept separately and ready to produce and pay over to the ward on final settlement. It also appeared that the gold thus purchased had gone into the hands of the ward, or her subsequent guardian, without any objection from her. The court refused to allow the charge asked, and the ward excepted ; and this is the error now insisted on.

Whether the guardian had authority to purchase the gold or not is not now a necessary question in this case. For aught that otherwise appears, the gold may have been of equal value with the "greenbacks" at the time of the purchase, and the ward was not injured by the change. But whether this was so or not, the ward elected to ratify the guardian's act, by accepting the gold in lieu of the paper currency, for which it had been exchanged. This she had the right to do. Having done so, it is now too late to complain. She must abide her election. If she preferred the currency, she should have rejected the gold, and demanded the currency, which had been improperly expended. *Wise* v. *Norton*, June term, 1872 ; 2 Kent, p. 230, marg. note *a*. This she did not do. There was, then, no error in the matter complained of.

The judgment of the court below, on the matter complained of in the cross-assignment, is affirmed with costs.