# Hullett v. Hood, Adm'r.

*Settlement of Accounts of Administrator.*

109  345
123  611
124  314

1. *Execution issued in life time of decedent; when preferred claim against his estate.*—Where an intestate left unincumbered property in the county of his residence, upon which an execution, issued, and received by the sheriff of that county, during the intestate's life, could have been levied, and the money made, under the statute (Code, § 2897) providing for the levy of such execution after the death of the defendant, the administrator is entitled to a credit for the amount of such execution paid by him, though the estate is afterwards declared insolvent.

2. *Lien of execution against plaintiff, for costs.*—The word "defendant," as employed in section 2894 of the Code, providing for the lien of executions "on the lands and personal property of the defendant subject to levy and sale," includes the plaintiff in the judgment, where execution is issued against him, under the statute (Code, § 2891), for the costs of the suit, created by him.

3. *Report of insolvency, when should be made.*—Under section 2223 of the Code, providing that whenever an executor or administrator of an estate is satisfied that the property of the estate is insufficient to pay its debts, he must file with the judge of probate a report in writing, that such estate is, to the best of his knowledge and belief,

insolvent, he may file such report at any time after his appointment, if he is satisfied that the estate is insolvent.

4. *Payment of unpreferred claims against estate afterwards declared insolvent.*—In paying debts, not of a preferred class, before the expira-tion of eighteen months from the grant of letters of administration, an administrator acts at his peril. If the estate afterwards proves to be insolvent, he can not charge it with the amount so paid by him, though he. may be subrogated to the rights of the creditors whose claims he has paid.

5. *Testimony of interested persons as to transactions with decedent.*— Where an administrator has paid an unpreferred claim against the estate, which afterwards proved to· be insolvent, both he and the claimant, because of interest, are incompetent, under section 2765 of the Code, as amended (Sess. Acts 1890–91, p. 557), as witnesses to establish the claim.

6. *Preferred claim against estate of decedent; when can not be allowed.* Where a claim presented against the estate of a decedent is for serv-ices rendered by an employee during the two years preceding the decedent's death, and the evidence does not show what part of the amount claimed was due for services rendered during the last year, no part of the claim can be preferred, under the statue, (Code, § 2079) allowing a preference to debts due to employees, as such, for services rendered the year of the death of the decedent.

7. *Same; when costs taxed against administrator are not entitled to preference.*—Costs. taxed against an administrator on a settlement by him of his intestate's administration of another estate are not pre-ferred claims against decedent's estate, under the statute (Code, § 2079) making the "fees and charges of administration" preferred claims.

APPEAL from the Probate Court of Blount.

Heard before the Hon. T. H. DAVIDSON.

In the matter of the final settlement of the accounts of James W. Hood, as the administrator of the estate of W. T. Hood, deceased, William Hullett, as the adminis-trator *de bonis non* of said estate, appointed after it was declared insolvent, and several creditors, objected to the allowance of the following items of credit in the account of said administrator in chief :

[Hullett v. Hood, Admr.]

| Date. | | No. of Vouch. | Am't. |
|---|---|---|---|
| 1893. | | | |
| Sept. 9. | To B. F. Bledsoe, sheriff, on three executions ......... | 3 | $ 19 40 |
| Nov. 7. | To J. R. Westbrooks, clerk hire, preferred claim ..... | 24 | 30 68 |
| Nov. 29. | To J. W. Hood, clerk hire, preferred claim............. | 27 | 122 80 |
| 1894. | | | |
| Feby. 20. | To J. M. Russell, witness fee in Bynum's estate........ | 36 | 2 60 |
| April 18. | To J. E. Bynum, surviving administrator estate of Isaac Bynum, on judgment in probate court of Blount county ................. | 41 | 331 95 |
| 1895. | | | |
| Jany. 12. | To W. F. Dickinson, commissioner's fees............. | 56 | 5 00 |

The above items were contested upon the following grounds, respectively:

"Vouchers Nos. 3, 24, 27, 36 and 41 as designated on said final settlement account are contested on the following grounds, viz: (1) Said vouchers are not proper charges against said estate. (2) Said estate did not owe said amounts represented by said vouchers, or any part thereof, and said amounts were not due and owing on any contract made and entered into by said W. T. Hood, deceased, in his lifetime. (3) Because said vouchers do not represent preferred claims against said estate, and the payment thereof by said administrator was without authority of law. (4) Said claims on which said vouchers purport said amounts to have been paid were not filed against said estate within eighteen months, as required by law. Vouchers Nos. 36, 41 and 56 are contested for the following reasons, viz: (1) Said claims were not presented against said estate within eighteen months after the grant of letters of administration. (2) Said claims are not preferred charges against said estate. (3) Said claims for credits are not payments made on preferred claims against said estate. (4) Said claims on which said payments purport to have

been made are shown to have been paid in full, and the same are not preferred claims against said estate.''

The opinion sufficiently states the facts in reference to the claims embraced in vouchers numbered, respectively, 3, 27 and 41. The claims represented by vouchers 36 and 56 were for items of costs taxed against the administrator on his settlement of his intestate's administration of the estate of Isaac Bynum, deceased, and paid by said administrator. In reference to the claim represented by voucher No. 24, the abstract states :

"The amount of this voucher was a balance claimed to be due said J. R. Westbrooks for services rendered the year of the death of decedent, as an employee, and for this reason it was claimed by the administrator to have been paid in full as a preferred claim against the insolvent estate. It was not controverted that the decedent was engaged in the mercantile business in Oneonta, Ala., at the time of his death, and had been for some time prior thereto. In support of the correctness of this voucher, as a proper item of credit, the administrator examined as a witness the said John R. Westbrooks, the person to whom said debt was claimed to be due for which said voucher was given. Against the objection and exception of the contestants, based upon the statute, that said witness was incompetent to testify in behalf of said administrator, or in his own behalf, to any transaction with, or statement by, the deceased person whose estate was interested in the result of the proceeding, and that said witness had a pecuniary interest in the result of the suit or proceeding, the court permitted said witness to testify as follows : 'The account is for services rendered W. T. Hood from January 1, 1893, to August 4, 1893. I was working for W. T. Hood at the time of his death. I worked part of the time as salesman in his store, and part of the time as bookkeeper. My services were worth $25 per month. The amount of money paid me as shown by the voucher was due me at the time Hood died, for services rendered.' And to this action of the court the contestants duly excepted. James W. Hood, the administrator, was also examined as a witness in his own behalf, in suport of said voucher No. 24. He testified that he knew of John Westbrooks working for his father. Against the objection of contestants, on the ground of the incompetency of said

[Hullett v. Hood, Admr.]

witness to testify in this suit or proceeding under the statute (Code 1886, § 2765; Acts 1890–91, p. 557), the court permitted said witness to state: 'John Westbrooks clerked in my father's store during the year 1893, up to the time of my father's death, August 4, 1893, and he devoted his whole time to the work. His services were worth about $25 per month. He presented a claim to me for the balance due. I knew my father hired Westbrooks to clerk for him. He commenced work for my father about October 19, 1892.' To this action of the court the contestants duly excepted. The court, against the objection and exception of the contestants, on the ground that there was better evidence of the presentation of the claim of Westbrooks, permitted the administrator to state: "The claim of Westbrooks was duly presented to me as such administrator, and to this action of the court the contestants duly excepted." Other material facts in reference to this claim are stated in the opinion.

Upon the hearing of all the evidence, the court rendered a decree on said final settlement allowing the said James W. Hood, as such administrator, credit for each of said contested items. Separate exceptions were duly reserved to the allowance of each of the items. The contestants appeal, and assign as error the several rulings to which exceptions were reserved.

M. L. WARD, DICKINSON & DARDEN, and EMERY C. HALL, for appellants.

R. T. ROBINETT, contra.

HARALSON, J.—The abstract shows that W. T. Hood died intestate on the 3rd day of August, 1893; that James W. Hood, a son of deceased, was appointed his administrator on the 21st of August, 1893, and that the assets and liabilities of the estate were such that it was known, within three months after intestate's death, that the estate was hopelessly insolvent. The administrator reported the estate insolvent, on the 27th of March, 1895, and on the 6th of May of that year the estate was decreed to be insolvent by the Probate Court. It is further shown, that the claims of $19.40, constituting voucher No. 3, were presented and filed against the estate on the 19th of September, 1893, and, on the same

day, were paid in full by the administrator out of the funds belonging to the estate. In his life-time, the intestate recovered two judgments in the Circuit Court of Blount county, against different parties, and executions having been issued on the judgments against the defendants, were returned "no property found." Thereupon, the clerk issued executions against the intestate, —the plaintiff in said judgments,—for the costs created by him in obtaining the judgments, as is provided may be done in section 2891 of the Code. These executions for costs came to the hands of the sheriff of Blount county in the life-time of intestate, and were in his hands, wholly unsatisfied and alive, at the time of his death; and the principal part of the property of intestate was in the county of Blount and unincumbered. The administator paid and satisfied these two executions in full, amounting to $19.40. The Probate Court allowed the administrator a credit in full on settlement for this sum, and in this it committed no error. These executions might have been levied, and the money made on them, after the death of the intestate.—Code, § 2897. Section 2894 creates a lien on the lands and personal property of a decedent subject to levy and sale in the county in which they were issued, from the time a writ of execution is received by the officer authorized to execute it, continuing as long as it is issued and delivered to such officer, without the lapse of an entire term. The word, "defendant," as employed in said section, includes the plaintiff in the judgment, when execution is issued against him under the statute, for the costs of the suit created by him.

Section 2223 of the Code provides, that "whenever the executor or administrator of an estate is satisfied that the property of the estate is insufficient to pay its debts, he must file with the judge of the Probate Court having jurisdiction of the estate, a report in writing, that such estate is, to the best of his knowledge and belief, insolvent." He is not bound to wait a day, after his appointment, to make this report, if he is satisfied that the estate is insolvent. In paying debts, not of a preferred class, before the expiration of 18 months from the grant of letters of administration, when he may the more surely know its condition, an administrator acts at his peril. If the estate afterwards proves to be insolvent, he cannot charge it

with the amount so paid by him, though he may be substituted for the creditors so paid, and receive the distributive share of the assets to which they would have been entitled.—*McNeil v. McNeil*, 36 Ala. 109 ; *Bates v. Vary*, 40 Ala. 437 ; *Byrd v. Jones*, 84 Ala. 341.   The effect of a decree of insolvency is to draw within the jurisdiction of the Court of Probate all claims against the estate, whether reduced to judgment or not ; and any claim not filed within nine months thereafter, as required by the statute, though, before the decree of insolvency, it may have been reduced to judgment against the personal representative, is forever barred.—3 Brick. Dig. § 329.

The claim for $331,95 as evidenced by voucher 41, should also have been rejected.   The intestate was the co-administrator, with J. E. Bynum, of the estate of Isaac Bynum, deceased.   The appellant, as administrator of intestate, filed his account and vouchers in the Probate Court, for a settlement of his intestate, on the estate of said Isaac Bynum, and a decree was rendered against him, as such administrator, on said settlement, on the 7th January, 1894, for $434.38, without any suggestion from him of the insolvency of said estate, or other objection, so far as appears.   On this judgment, on the 18th of April, 1894, before the declaration of insolvency, he paid the sum of $216,75, and on the 24th May, 1895, after the estate was declared insolvent, he paid $115,20, the two payments, together, making the sum of $331,95, as represented by voucher 41.   The claim should have been disallowed.   He paid it at his own risk, and the most he can claim is to be subrogated to the rights of the creditor, whose claim he has paid, and receive his *pro rata* dividends out of the assets, to which the creditor would have been entitled, if his claim had been properly verified and filed as required by law.   *Byrd v. Jones, supra* ; *Bates v. Vary, supra*.

Voucher No. 24, for $30,68, was sought to be established by the evidence of Westbrooks himself, the claimant, and by that of the administrator, who had paid, and was interested to maintain, the claim.   Both witnesses were, therefore, directly interested in establishing the claim against the estate ; and their evidence relating to a transaction with the deceased,—W. T. Hood,—whose estate was being settled, and interested in the result of the proceeding, fell directly within the inhibition of the

statute. Code, § 2765, as amended, Acts, 1890-91, p. 557. Westbrooks claimed that intestate owed him $210, and the evidence tended to show that he owed the estate $178,32. If Westbrooks' claim of $210 was correct, this left $30,68 balance due him, which the administrator paid. In the abstract it is stated, "On the statement of Westbrooks alone, the administrator, on this settlement, balanced the store account against Westbrooks," leaving $30,68 the amount of the voucher. The claim should have been disallowed,—*Dunlap v. Mobley*, 71 Ala. 102; *Adler v. Pin*, 80 Ala. 351. The evidence of the other witnesses went no further, as stated by them, than that Westbrooks "was seen in and about the store of W. T. Hood, and seen at work in the store for sometime prior and up to the death of W. T. Hood, and that his services were reasonably worth the sum of $25 a month." This evidence was too indefinite to establish anything.

The evidence does not support the claim of J. W. Hood for $122,81 as due him as an employe of his intestate, during the year of his death, as represented by voucher 27. Whatever sum was due him by intestate, for services rendered as an employe during 1893, was a preferred claim, entitled to be paid in full, under section 2079, of the Code. His claim as made out, sworn to and filed against the insolvent estate, was for "Balance due on clerkship, 1892, 1893, due Sept. 15, 1893, $122,81." How much was for the one and the other year, is not shown, and only that part accruing in 1893 is preferred under the statute. There was evidence tending to show that he worked seven months in 1893, and that his services were worth $30, a month; but his claim as presented shows that the whole of that amount was not due in 1893. It is shown further, without dispute, that the claimant owed a store account to W. T. Hood, at the time of his death, amounting to $186,35. He balanced this off, by crediting himself in these words,—"By work $186,35," making the amount he claimed,—$122,81,— (if the whole of the latter item were a proper charge,) the sum of $309,16 which was paid him for hire as clerk; when if he worked seven months in 1893, at $30, a month, the most he could claim as preferred was $210. The evidence was too vague and uncertain as to the amount, if any, that was really due him for wages in 1893, to justify its allowance. Besides, he was owing a

store account in 1893, which claimant himself makes appear ought to be treated as a payment on wages, if anything was due him on that score.

Claims as represented by vouchers 36 and 56, the one for $2,60, and the other for $5,00 should have been disallowed. They were not for costs incurred on this settlement, and were not preferred claims under the statute. Code, § 2079.

Reversed and remanded.