## Noble *et al. v.* Jackson.

*Final Settlement of Executors in Probate Court.*

124  311
s132 231

124  311
135  594
135  596
135  597

1. *Executor; when not competent witness for co-executor.*—One executor of a will is not a competent witness to prove an allowance made to another executor by his co-executors, for the reason that he is interested in maintaining the payment which he and the others had made so as to get a credit for it against the estate.

2. *Assignment of error necessary.*—The action of the trial court which was excepted to will not be considered on appeal unless assigned as error.

3. *Commissions to executors; how much allowed.*—By the statutes, Code, §§ 219, 220, a discretion as to the amount of commissions allowed to executors and administrators is lodged in courts charged with their allowance, subject to two limitations; the allowance must be a fair compensation for the trouble risk and responsibility of the executor or administrator, and it must in no case exceed two and one-half per cent. on receipts, disbursements, personal property appraised and notes and money distributed. But this per cent. being suffi-

[Noble *et al.* v. Jackson.]

cient in the most extreme cases, its allowance in many instances would afford more than that fair compensation contemplated and provided for by the law-makers.

4. *Attorney's fees; allowed executors.*—When an executor or administrator procures the aid and advice of counsel in his administration, in good faith for his own protection and that of the estate, paying only such compensation as is fair and reasonable when considered in connection with the value of the estate and the services rendered, he should be allowed a credit for such compensation. Nor is he allowed such compensation only when he is successful in the prosecution of suits brought by him or in defense of suits brought against him. Where he institutes suit in good faith and on reasonable grounds and is not wanting in proper diligence, he is entitled to reimbursement notwithstanding his failure of success.

5. *Same.*—An executor or administrator under the system prevailing in this State should have the assistance and advice of counsel in many of the duties devolving on him—this for his protection and the prevention of future litigation.

6. *Commissions not due executor till allowed by court.*—In the absence of an agreement by those interested in an estate commissions are not payable until ascertained by the court; but there is no rule of law or policy which prohibits parties *sui juris* from making such allowance by agreement in advance of the action of the court, subject to be increased or diminished by the court. Hence, where such agreement is made the executors are not chargeable with interest on the sum so expended for commissions, although the amount may afterwards be reduced by the court.

7. *Interest chargeable to executors; when.*—Whether or not an executor should be charged with interest on sums paid out by him without agreement, depends on their allowance as credits against the estate.

8. *Same.*—Diligence on the part of executors and administrators in making settlements and accounting to those entitled to it for the money received, is a high duty; and where an executor or administrator delays to make a final settlement after eighteen months he is chargeable with interests on the funds in his hands, except so much of them as may be necessary to be retained to meet any disputed claim or threatened litigation and the costs of making final settlement.

APPEAL from Montgomery Probate Court.
Tried before Hon. J. B. GASTON.
The case is fully and clearly stated in the opinion.

[Noble *et al.* v. Jackson.]

GUNTER & GUNTER, for legatees, appellants, cited the following authorities: (1). On the matter of commissions to executors.—*Gould v. Hays,* 25 Ala. 432; *Neilson v. Cook,* 40 Ala. 512; *Harris v. Martin,* 9 Ala. 875; *Powell r. Powell,* 10 Ala. 914; *Pryor v. Davis,* 10 Ala. 125; *In re. Worthington,* 22 N. Y. Sup. 19; *In re. Richardson,* 23 N. Y. 978; 2 Williams on Executors, 871-1310; *Allen v. Martin,* 36 Ala. 330. (2). On the matter of attorney's fees.—*Minus v. Mims,* 39 Ala. 718; *Bates v. Vary,* 40 Ala. 440; *Hooper v. Mitchell,* 19 Ala. 268; *Pickens r. Pickens,* 35 Ala. 453. (3). On the matter of interest charged against executor.—*Pearson v. Darrington,* 32 Ala. 227; *Eubanks v. Clark,* 78 Ala. 73; *May v. Green,* 75 Ala. 166.

GORDON MCDONALD, for executors, appellants.—(1). The executors not chargeable with interest.—*Clark v. Knox.* 70 Ala. 608; 3 Brick. Dig., p. 486; *Englehardt v. Young's Heirs,* 76 Ala. 535. (2). Executors allowed counsel fees.—70 Ala. 63; 80 Ala. 504.

The record does not show counsel for appellee.

TYSON, J.—The matter of controversy in this case grows out of the refusal of the court to allow the payment of certain claims to G. D. Noble and Ruth Hooker, two of the appellants; 2nd, the amount of commission allowed by the court to the executors and executrices; 3rd, the disallowance as a credit amounts paid to Gordon McDonald, Esq., as attorney's fees, and 4th, the matter of interest charged against the executors.

It appears that Jesse Hooker died in June or July, 1896, leaving an estate consisting entirely of personal property of the value of about $90,000, leaving a will naming the appellee as residuary legatee and the appellants and Mrs. Jackson executors and executrices of his will which was probated in Montgomery county. The debts of the estate are shown to have been only $1,098,-04; of this amount $905.15 were for expenses incurred in and about the purchase and improvement of a lot in the cemetery, the purchase of casket, clothing, etc. The remaining indebtedness of $193.89 comprised small bills due and owing by the testator contracted by him. The

property comprising the assets of the estate consisted of bonds, stocks, mortgages, notes and money.

The claim of appellant Noble for $600 for services rendered the testator during his lifetime, was attempted to be established by the testimony of Mrs. Hooker, the wife of the testator and one of the executrices. It appears that this claim had been paid by Noble by the executors and executrices and the purpose of the testimony, to establish it was to have the court allow them a credit for the amount paid him. The court properly excluded the testimony, for the obvious reason, that Mrs. Hooker, being interested in maintaining the payment which she and the others had made so as to get a credit for it as against the estate, was an incompetent witness.—*Hullet v. Hood, Admr.*, 109 Ala. 345. There was no proof to support the claim of Mrs. Hooker, and for this reason it was properly disallowed. The refusal of the court to allow Noble his claim for special or extraordinary services is not assigned as error and we cannot consider the action of the court in that regard. But had it been, in the absence of the will of the testator from the record, we would have been compelled to treat the question as pertaining to the administration of the estate in the ordinary mode of administering estates under the law.

2. The next question presented for consideration is the one involved in the assignment of error based upon the allowance of commissions.

Compensation or commissions allowed administrators and executors for ordinary services are governed by section 219 of the Code, which reads as follows: "Executors and administrators may be allowed such commissions on all receipts and disbursements by them, as such, as may appear to the probate court a fair compensation for their trouble, risk and responsibility, not to exceed two and one-half per cent. on the receipts, and the same percentage on the disbursements; and the court may also allow actual expenses, and, for special or extraordinary services, such compensation as is just."

Section 220 provides that "upon the appraised value of all personal property, and the amount of money and solvent notes distributed by executors or administra-

tors, they shall be allowed the same commissions as upon disbursements."

By the terms of these statutes it is manifest that a discretion as to the amount of commissions is lodged in courts charged with their allowance and that but two limitations upon the exercise of this discretion are imposed: the allowance must be a fair compensation for the trouble, risk and responsibility of the executor or administrator, and it must in no case exceed two and one half per cent. on receipts, disbursements, personal property appraised, and notes and money distributed. The statute is equivalent to a legislative declaration that a fair compensation for the ordinary duties and responsibilities of an executorship cannot exceed the two and one-half per cent. which the court is authorized to allow, or, in other words, that no case can arise in which that maximum would not furnish sufficient compensation. Being thus *sufficient* in the most extreme cases, its allowance in many instances would afford more than that fair compensation contemplated and provided for by the law-makers. This, in our opinion, is such a case. The estate here being administered was, at the death of the testator, it is true, quite a large one, amounting to something like $90,000. It consisted, as we have heretofore stated, of money, mortgages and other readily convertible securities. The executors were charged with the duty of collecting up the assets, paying the debts of the testator and distributing the residue to the legatee, under the will. It is clear to our minds that the full statutory commission on receipts and disbursements—that is, two and one-half per cent. on $180,000—would be excessive; their services in performing those duties in respect to this estate would not be worth nearly so much as four thousand five hundred dollars. Since the case must be reversed upon another point, we will not forestall the probate judge's discretion in fixing the amount upon another hearing.

3. One of the contentions here as against the allowance of a credit of $1,542.50 paid Gordon McDonald, Esq., for services rendered as attorney, is that no itemized claim was presented showing the items comprising the account and the value of each item. In other words,

the amount or value of the whole was proved in gross and unless all of the services were proper charges, none can stand. We entertain no doubt as to the correctness of this proposition, provided the objection to the allowance proceeded on the ground that no sufficient statement of the services rendered and paid was made in the court below. There appears, however, in the record before us from the opinion this statement: "In the original account filed in this court, I find the following under the head of 'amounts paid out:' 'The executors also file with their vouchers, marked No. 61, account presented to them by Gordon McDonald, Esq., which shows a balance due him of $432.50. The executors ask that we be allowed to pay such balance. The account and voucher marked No. 61 is an itemized account for services to Geo. D. Noble *et al.* executors of Jesse Hooker, deceased, amounting to $1,975, with credits amounting to $1,542.-50, leaving a balance of $432.50.'" We have quoted this extract from the opinion solely for the purpose of showing that the court had an itemized statement of the claim before it and considered it; and doubtless was influenced by this statement in his opinion as being sufficient, in striking from the bill of exception the accounts and vouchers filed by the executors, which would, of course, disclose it otherwise in the record, if they had been permitted to remain in the bill of exceptions. So then, it may be said that an itemized statement of the services rendered by the attorney and the value of each item of service was before the court. It is true that Mr. McDonald testified to the various items of services rendered by him, but testified to the value of only one of them; while the witnesses Crum and Winter, examined on behalf of the executors, testified to the value of such services in gross and not to the value of each item. There was no objection by the appellee to the testimony of either of these witnesses, nor does the record disclose that the objection to the allowance of the credit proceeded upon the ground here contended for. On the contrary the cross-examination of the witness McDonald by appellee's counsel in the court below shows, that the credit asked was resisted upon the grounds that the service rendered by him was not for the benefit of the estate

[Noble *et al.* v. Jackson.]

or to protect the executors against the unjust or wrongful claims or demands of the appellee or others. This same contention is made here in this language: "Trustees have no right to employ a lawyer to show them how to squander the estate or how to retain them in possession of the assets for the purpose of coercing the payment of unjust demands." Indeed the judge trying the cause enters into quite an extended discussion to show that the tax suit could not have been maintained. This record does not contain the record in that case, but it does appear from the testimony, that it was the honest opinion of their attorney that the suit was a meritorious one and that the result accomplished was an adjustment of the amount of the taxes claimed by the paying of a very much smaller sum by the appellee.

We do not understand the rule to be, that executors are allowed an allowance for counsel fees paid by them, only when they are successful in the prosecution of suits brought by them or in the defence of suits brought against them. Such a rule would make them, in a measure, at least, to the extent of the expense incurred by them in the prosecution or defense of all suits to which they are parties, insurers. The rule, as we understand it, is, that an executor who institutes a suit in *good faith* and on reasonable grounds, is entitled to reimbursement of the costs and expenses of the litigation, notwithstanding his failure of success, provided there does not appear to have been a want of proper diligence. *Holman v. Sims*, 39 Ala. 710. In *Taylor v. Kilgore*, 33 Ala. 214, it is said: "In the institution of the suit in South Carolina, the guardian had no conceivable motive or interest to induce him to act *mala fide*. In the institution of the suit, he acted under the advice of counsel learned in the law, and of unquestioned integrity, who appears to have been fully informed of all facts, pertaining to the case, which were known to the complainant. There is, therefore, no just reason for the imputation of bad faith."

The testimony shows services rendered by McDonald for the executors in a proceeding instituted by this appellee to require them to give a bond as such which resulted in a judgment for them. Enough is shown in the

record to justify the finding that the executors were relieved of giving bond by the terms of the will, and doubtless the proceeding set on foot by this appellee, the sole residuary legatee under the will, to require them to give bond, was instituted under subdivision 1 of section 67 of the Code. Manifestly the testator regarded it of importance to the administration of the affairs of the estate that the persons named by him as executors and executrixes should administer them. And so, too, it would seem that the legislature considered it highly important that these executors should be trusted with its administration without bond as no bond can be required of them except when the interest of a legatee is or will be endangered for want of security or they are likely to commit a waste, to the prejudice of some person interested; nor could their removal be had except for incapacity, failure to return inventory or account of sales, to make settlements or to do any act as such when lawfully required by the judge of probate, wasting, embezzling, or other maladministering of the estate, or using funds of the estate for their own benefit. These safeguards for their protection as the representatives of the testator, were not enacted for the personal benefit of the executors, but for the benfit of the estate. This being true, where a proceeding is instituted to require them to give a bond or for their removal, and they in good faith and on reasonable grounds defend against the proceeding and employ an attorney to represent them and pay him, they are entitled to be reimbursed out of the estate the amount so paid him, if reasonable. Or, to state the principle abstractly and broadly it may be said: "Whether involved in litigation or not, any trustee is entitled to the assistance and advice of counsel in the performance of his duties, and there is neither justice nor good conscience in charging him with the compensation of such counsel. The care and diligence the trustee is required to exercise, is not for his own interest, but for the interest of the *cestui que trust*. The counsel assists and advises for them, and for their protection. Of course, in seeking such advice and assistance, and in the amount of compensation, good faith must be observed. The protection of the trustee, and

the preservation of the trust estate, are alone considered in determining the propriety of an allowance of the compensation to the counsel he may employ to aid and advise him. An administrator or executor, under the system prevailing in this State, should have the assistance and advice of counsel, in many of the duties devolving on him. The advice and supervision of intelligent, conscientious counsel is to his protection, and the prevention of future litigation. So many of the proceedings he must take are statutory, and their value dependent on their conformity to the statutes authorizing them—so many of them are practically *ex parte,* and there is, and has been, such a 'lamentable looseness,' in keeping the records of the court, before which he must proceed, that a prudent man, even at his own expense, would prefer the aid and assistance of counsel, to the hazards he would incur in acting without it. When, therefore, an administrator or executor, procures the aid and advice of counsel in his administration, in good faith, for his own protection, and that of the estate, paying only such compensation as is fair and reasonable, when considered in connection with the value of the estate, and the services rendered, he should be allowed a credit for such compensation. * * * Nor is it material that the services rendered were for the benefit of the administrator, unless it appeared he was seeking a *personal benefit, in opposition to his duty as trustee.* If that appeared, he would not only be refused an allowance of such compensation but would be subjected to a loss of compensation for his own services. Any advice and assistance rendered a trustee, is in a narrow sense for his benefit. It may protect him in action or in passiveness. A good reason for making a fair and just allowance to him for the aid of counsel, is that he is acting wholly in a fiduciary capacity, for the benefit of others, and so long as he is honest and diligent, should not be subjected to the dangers of personal liability. That he guards himself from such liability, and keeps within the line of his duty, and thereby secures a personal benefit, is a reason for and not against the allowance of such compensation."—*Smyley v. Reese,* 53 Ala. 99.

Without further consideration in detail of the items

of service rendered these executors and executrixes, it would seem that what we have said is a sufficient guide for the determination of every question likely to arise out of this particular claim upon another trial.

4. The remaining question to be considered grows out of the various charges of interest decreed by the court against the appellants upon certain items. And it is for an error clearly committed by the court in this respect that the case must be reversed. One of the charges against the appellants was of interest on $2,400 paid to them as commission under the agreement of October 3, 1896. It appears from the recitals in this agreement that all the special legacies had been paid and the remainder of the estate, amounting to about $20,000, was to be paid to this appellee upon a final settlement of the estate. One of the terms of the agreement was to authorize the executors to pay themselves this sum of $2,400 as commission, subject however to their right to have the amount increased by the court or reduced by the appellee. The court reduced the amount of the commissions to $1,800—$600 less than the sum authorized to be paid under the agreement.

It is doubtless true that in the absence of this agreement, the commissions were not payable until ascertained by the court, but we know of no rule of law or policy which prohibits parties *sui juris* from making this contract. The payment being made under it and authorized by it, the executors were not chargeable with interest thereon. The use of the money, being by the express consent of the sole party interested in the estate, was not in violation of their duties as trustees and constituted no breach of trust by them. As to whether they should pay interest on the $600 and $194.71 paid to Noble, the $171 paid Mrs. Hooker, and the amount paid as counsel fees, depends of course upon their allowance as credits against the estate.

The court below, and it is complained of here, charged the executors with interest upon all money in their hands, whether used by them or not, from the 1st day of March to the date of the settlement. The theory upon which this charge was made against them was, that they should have made a final settlement of the estate at the

[Noble *et al.* v. Jackson.]

expiration of eighteen months after grant of letters, or should have distributed the assets in their hands to the appellee to the extent of at least of a retention by them of only a sufficient amount to meet in any emergency the claims asserted by Graham & Steiner and the tax collector. It appears that Graham & Steiner's claim was $500—for legal services rendered the executors, which they disputed the correctness of as to amount, and the tax matter of about $50. It was on account of these claims and the just anticipation of suits upon them, that the executors undertake to justify their delay in making a final settlement. As each of these claims, if just and paid by them, would have been a proper charge against the estate, they could not have been required to distribute the entire assets of the estate, yet, they were not justified in retaining so large a sum as $20,000, or for that matter, $4,500, thereby making it unproductive. This principle is clearly announced in *Clark v. Knox*, 70 Ala. 620, where it is said: "What will constitute unseasonable delay in making a settlement, rendering the executor or administrator liable for interest, must depend upon the particular facts and circumstances of each case. The inquiry is, whether, in view of these facts and circumstances, a 'prudent man, dealing with his own funds, for his own interest, would have retained the money unproductive, or would have appropriated it as it was *prima facie* to be appropriated. The pendency, or the just anticipation of suits which, if the event of them was unfavorable, would seriously diminish the assets, complicating the accounts if there was a distribution, may be a good reason for delaying the settlement, and, during the period of reasonable delay, may justify keeping the moneys without a liability for interest; or, *if the amounts involved in such suits are not large, compared with the assets, the keeping without a charge for interest of a sum sufficient to answer the judgments which may be rendered in them.* * * * These, and other causes developed by the particular facts of the case, may excuse a delay in making settlement, and relieve from liability for interest. * * * Diligence in making settlements, and accounting to those entitled to receive it, for the money received, is as high a duty, as im-

peratively demanded by law, as diligence in the collection, or in reducing to money by appropriate proceedings, when a legal necessity exists for the reduction of the property, real or personal, subject to administration."

We are of the opinion, therefore, that the executors were properly chargeable with interest upon all money unproductive in their hands, less the amount which they would have been allowed to retain had they made a partial settlement of the estate on the 1st day of March, and the cost and expenses attendant upon the making of the final settlement. It appears that the court in charging interest did not calculate it upon the amount in the manner pointed out above, but upon the gross sum of money in their hands, unproductive.

The decree in the cause seems to have been rendered only against three of the executors, not including the executrix, Mrs. Jackson. She appears to have been before the court and to have received six hundred dollars of the amount paid as commissions under the agreement of October 3, 1896. And for aught that appears in the record was chargeable with all sums charged by the court against the other three.

We confess to having had great difficulty in arriving at a correct conclusion in the case owing to proper matters being omitted from the record, such as the account filed by the executors, vouchers, etc.

For the errors pointed out the decree will be reversed and the cause remanded.

Reversed and remanded.