SOUTH & N. A. R. CO. v. RAILROAD COMMISSION OF ALABAMA et al. LOUISVILLE & N. R. CO. v. SAME. NASHVILLE, C. & ST. L. RY. v. SAME.

(Circuit Court, M. D. Alabama, N. D. June 30, 1909.)

Nos. 263, 264, 266.

1. EQUITY (§ 151*)—PLEADING—IMPERTINENCE.
    If an allegation in a bill, when proved, could exercise any proper influence on the decision of the cause, it cannot, in general, be said to be impertinent.
    [Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 380–382; Dec. Dig. § 151.*]

2. EQUITY (§ 151*)—PLEADING—IMPERTINENCE.
    In suits to determine the constitutionality of statutes fixing railroad rates, alleged to be confiscatory, in which there are a large number of questions of fact and law to be considered, and which properly have a bearing on the issues, a wide latitude is allowed in pleading, and allegations of facts which may be material will not be held bad for impertinence because they are evidential in character and not issuable.
    [Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 380–382; Dec. Dig. § 151.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. EQUITY (§ 151*)—PLEADING—IMPERTINENCE.

In a bill to enjoin the enforcement of railroad rates established by a state, allegations of the motive of the officers or legislators of the state in prescribing and enacting ·the statute complained ·of are impertinent; but allegations that power conferred by such statute on a railroad commission to alter the rates fixed thereby in its discretion with respect to individual carriers is being so used as to discriminate against complainants, and to favor other carriers as a reward for dismissing suits brought to test the validity of the law, are pertinent as tending to show that the statute, in operation, denies to complainants the equal protection of the laws.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 380–382; Dec. Dig. § 151.*]

4. EQUITY (§ 151*)—PLEADING—IMPERTINENCE.

Where, in such a suit, a supplemental bill was filed, praying for an injunction to restrain the county solicitors and sheriffs of the state and clerks of the courts from instituting criminal prosecutions and civil suits against officers of complainants for violations of the statute, pending a determination of its validity, and from issuing and serving process in such suits, allegations showing threats by the Governor of the state to cause such suits to be instituted in every case of violation, notwithstanding the issuance of an injunction suspending the enforcement of the law, are pertinent.

[Ed. Note.—For ·other cases, see Equity, Cent. Dig. §§ 380–382; Dec. Dig. § 151.*]

In Equity.

These cases are submitted on excèptions for impertinence to the first and second supplemental bills. The nature of the exceptions will readily be gathered from the opinion.

See, also, 157 Fed. 944.

Henry ˙L. Stone, Gregory L. Smith, S. J. Bowie, Geo. W. Jones, and J. Manly Foster, for complainants.

Alex. M. Garber, Atty. Gen., H. C. Selheimer, and S. D. Weakley, for respondents.

JONES, District Judge. The motion of complainants to strike respondents' exceptions to portions of the first and second supplemental bills for impertinence cannot prevail. An examination of the record shows that, at the date of the order suspending further proceedings until the decision of the Circuit Court of Appeals upon the interlocutory injunctions, no rule day had passed after the service of process, at which the exceptions were required to be presented; and, under the circumstances attending the preparation of these cases, the court does not feel at liberty to hold the respondents in default for not taking the exceptions on the next rule day after the decision of the Court of Appeals. The number of these exceptions and the necessity for a prompt ruling upon them, to get the cases speedily at issue, make it impracticable to discuss each exception separately.

Whether an allegation is objectionable for impertinence depends upon the nature and scope of the legitimate issues which can arise under the bill. If an allegation, when proved, could exercise any proper influence in the decision of the cause, it cannot, in general, be said to be impertinent. The supplemental bills open a wide field of inquiry,

in the exploration of which the court and parties must trace and consider the significance of hundreds of facts and circumstances, which, scanned separately, may not be of consequence, and yet, when taken as a whole, may furnish valuable aid in shaping a right determination of the causes. So many difficult and intricate questions of law and fact are involved in suits attacking freight and passenger rates upon constitutional grounds that it has become the custom of the pleader in this class of bills not only to state enough of the facts to show that the allegations as to the rates being unreasonable or confiscatory are not mere conclusions of the pleader as distinguished from allegations of fact, but to go quite beyond that, and to allege many facts and circumstances which, strictly speaking, are merely evidential or argumentative, in support of the contentions of the complainant, and to meet what may be offered in opposition to them, such as the facts going to show the value of the property devoted to the public use, the justice of the carrier's methods of transacting business, the fairness of their accounts of expenditures and disbursements, the reasonableness of the rates charged, the gross and net earnings, the volume of domestic and interstate earnings, how they are derived and apportioned respectively, and the like. Frequently the pleader dwells upon particular results and phases of the practical operation of the rate statutes upon the carrier's business, as conducted under existing conditions. Sometimes the pleader sets forth, as illustrative of his claim as to the true interpretation and construction of the statutes, the "purpose" of the legislation, meaning the intent as gathered from the language of the statutes, and the conditions with which they deal. Strictly speaking, all this is objectionable, under the ordinary rule of good pleading, as, in legal effect, it is only setting out in extenso in the bills mere argument or evidence to prove the proper construction of the statutes. Yet such allegations foreshadow the principal contentions of law and fact and the numerous issues which arise on the proof, which must enter into the taking and stating of the accounts, in which all the issues are finally centered. Such methods of outlining the several issues and giving notice of them in advance are promotive of fairness and serve a most useful purpose in lightening the labors of the court and counsel. For these reasons the courts of late have shown a marked tendency to relax the ordinary rules regarding impertinence, and to permit a latitude of allegation in bills of this sort, which is not allowed in other cases, where the material issues are far fewer in number and of a much simpler nature.

Whenever historical facts throw light upon the meaning of a law, or the rights and duties of suitors thereunder, such facts are as proper to be considered in determining the intent of the statute as if set out in the bill itself, and the courts may take judicial notice of them without being specially pleaded. Taylor v. Barclay, 2 Sim. 213; Ashley v. Martin, 50 Ala. 537; Holy Trinity Church v. U. S., 143 U. S. 457, 12 Sup. Ct. 511, 36 L. Ed. 226; Blake v. U. S. 103 U. S. 227, 26 L. Ed. 462.

The court can take judicial notice of the proclamation calling the extra session and the contents of the Governor's message, although

the bills failed to mention them. Whether the statutes under review fall within the objects stated in the proclamation is material, since, under the Constitution of Alabama, legislation upon any subject not included in the call would be invalid unless enacted by a two-thirds vote. Besides, if the proclamation and message shed light upon the construction and interpretation of the statutes, inserting them in the bill can have no other effect than to call the attention of the court to sources of information to which it can always resort. It raises no impertinent issue, and merely places the proclamation and message conveniently at hand for the court, if the case be one in which it is proper to consider them.

The respect which each of the great departments of the government owes, and ordinarily accords, to the action of other co-ordinate departments, is founded upon the highest considerations of the public good. The courts have taught it since the days of Marshall. It has become a canon in our jurisprudence. The importance of its observance has been emphasized, with here and there an exception, by the example of a long line of illustrious public servants, who have exercised legislative, executive, or judicial functions, in the state or nation, from the earliest days of the republic down to the present time. The Legislature may listen to whom it pleases as to the necessity or policy of legislation. The Governor is under constitutional duty to recommend measures for its consideration. Neither is accountable to the courts for the motive. Aside from the impracticability of determining the particular motive in a given case, it would be offensive in the extreme for one department of the government, when called upon to deal with the validity or propriety of the action of another department, to challenge and scrutinize its motives. Once this is permitted, harmony and co-operation between the several departments of the government would be at an end, and in time the whole government would be brought into contempt before the people. The motive of the Legislature, or of the Governor, in the passage and approval of laws, as distinguished from the intent of the legislation, is not a fit subject of inquiry in the courts. Whether the Legislature be moved primarily on its own initiative, or at the instance or pressure of others, is not of the slightest consequence. Whatever it does is none the less the exercise of legislative power. Its action must stand, no matter what the motive which led to it, if in the enactment the Legislature has transgressed no provision of the fundamental law, state or federal. The issue is one of power, not of motive. When an enactment is challenged in the courts, the sole inquiry is: What has the Legislature actually enacted, and is it forbidden by the fundamental law? The intent of the Legislature is to be gathered from the language used, the former state of the law, the evil to be remedied, the ordinary and natural effect of the operation of the statute upon the right asserted, and whether, when thus construed and interpreted, the Legislature has transgressed the bounds of its power.

It follows that the several allegations challenged for impertinence concerning the Governor's motive in calling the extra session, or what he sought to accomplish thereby, or expected to result therefrom, his personal whim, caprice, or prejudice in causing certain provisions

to be drafted in the statutes, his employment of attorneys for that purpose, the statements made by him in unofficial utterances (with the single exception hereafter noted), his interviews in the newspapers, or letters to members of the Legislature, his denunciation of the complainants as defiers of the law, and his criticism of them for resisting the legislation in the federal courts, are impertinent and must be expunged. They are of no more importance, and no more to be considered in a court of justice, than like utterances of any other person in the newspapers or upon the hustings.

The other exceptions for impertinence are controlled by different principles. They do not involve inquiry into the "motive" as distinguished from the "intent" of the legislative power in the passage of the laws, but, in the main, relate to the administration of the laws enacted by the Legislature by a subordinate, administrative body, or executive auxiliary. They involve official action and inquiry as to its ordinary and natural effect upon the rights of parties, thereby enabling the court to gauge the reasonableness of such acts and what effect the court should accord to them.

It is alleged in the bills that the power given the commission to change and alter rates and classifications fixed by statute has been administered with an "evil eye and an unequal hand," to the prejudice of the complainants. In support of this contention, the bills aver that his excellency, the Governor, threatened to cause solicitors and sheriffs to indict and arrest officers and servants of the carriers for every charge made or collected by them which did not conform to the statutory rates, notwithstanding this court, by the filing of the bills to contest the reasonableness of the rates, had acquired exclusive jurisdiction to decide the matter and had issued injunctions to prevent interference with the carriers pending final hearing. It is alleged that the purpose of these threats was to impress upon the carriers that such ruinous consequences would result to their business if they attempted to enforce their rights in the courts, that they would be induced to abandon the litigation, and that, as a further inducement to them to do so, the Governor, in behalf of the state, contracted with several of the litigating carriers who, by the statutes complained of, were put on an equal footing in many respects as to rates and classifications with these complainants, if such other carriers would abandon their contests in the courts, the public authorities would give them more favorable rates and classifications than the statutory rates, which are still sought to be enforced against these complainants, though the carriers thus to be favored are, in all practical respects regarding these matters, similarly situated as complainants; and that the Railroad Commission, in the administration of its power, changed the statutory rates and classifications, in favor of the contracting carriers, leaving complainants still bound by the statutory rates, and thus, it is alleged, in the administration of the rate statutes by the state authorities, arbitrary and unjustifiable discrimination in rates and classifications has been made to the prejudice of complainants, who still insist upon their rights in the courts.

The court cannot concur with the view of respondents' counsel that the only permissible inquiry upon this branch of the case is whether

the carriers who contest the statutory rates receive just compensation under them, and, if they do, it is immaterial whether other carriers, under practically the same conditions and equities, are given different and better rates and classifications by means of the changes made by the commission in the statutory rates and classifications, which are still enforced against complainants. The state is powerless, either directly, or indirectly, to accomplish such results. Under the federal Constitution complainants are protected equally against confiscatory rates, and a denial of the equal protection of the laws, and under the Constitution of the state they are protected against unreasonable rates and vicious class legislation. Covington & Lexington Turnpike Road v. Sandford, 164 U. S. 578, 598, 17 Sup. Ct. 198, 206, 41 L. Ed. 560, does not hold to the contrary, but, on the other hand, suggests the invalidity of such discrimination. It says:

"If the rates prescribed are manifestly much lower, taking them as whole, than the Legislature has by general laws prescribed for other corporations whose circumstances and locations are not unlike those of the defendant, a different question would be presented."

And in numerous cases since then the Supreme Court has held that, the conditions being substantially the same, favor to one person, and disfavor to another, and the imposition of unequal burdens upon them, effected by the terms of a statute or the manner in which it is enforced, is a denial of the equal protection clause.

The alleged contracts made with the Southern Railway and other carriers, and what was done by the commission in carrying out those contracts, and in giving what are alleged to be better rates and classifications to the carriers who abandoned the protection of the court than those allowed by the statute to those who remained in the court, in the language of Yick Wo v. Hopkins, 118 U. S. 373, 6 Sup. Ct. 1073 (30 L. Ed. 220), present the administration of the power given the commission to change rates and classifications "in actual operation." As observed in that case:

"Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by the public authorities with an evil eye and an unequal hand, so as to make unjust and illegal discrimination between persons in the same circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution."

How else may the suitor show the administration of the law "with an evil eye and an unequal hand," than by showing the instances in which the authorities have executed the law concerning different persons, the relative situation of those different persons, and the ordinary and natural effect of the administration of the law upon their rights, and whether, when as thus administered, invidious burdens are placed upon one person, and favors conferred upon others, who, relatively speaking, are in the same class? The administration "with an evil eye;" which the Constitution condemns, is the intent of the authorities, as distinguished from their motive, to bring about the forbidden results. The authorities are conclusively held to intend to accomplish the ordinary, natural, and probable results of their acts. The forbidden intent, and whether it has impelled the action of officials, can be ascertained only by considering what is the ordinary, natural, and direct result of

such administration of the law upon the rights of the parties, as fixed and determined by the conditions and situations which they occupy, with reference to the subject-matter to which such administration of the law relates.

All the circumstances and surroundings connected with the administration of the law may be looked to, to determine whether what has been done was done reasonably and fairly, or arbitrarily, and with disregard of the rights of the various persons as to whom it has been differently executed. Moreover, it is to be observed, in this connection, it is a well-settled rule that, whenever a power is granted to an executive or administrative body in general terms, the law always requires that the power be exercised in a reasonable manner, and, while the Legislature itself may act arbitrarily in its enactments to any extent which does not offend the state and federal Constitutions, no such principle can be invoked to uphold the acts of subordinate administrative bodies, which must be reasonable in themselves in view of all the circumstances and situations with which they deal, and, failing in that, cannot be upheld in the courts. The alleged contracts made by the Governor, in behalf of the state, with the Southern Railway, and allied lines, and what was subsequently done by the Railroad Commission in changing, in behalf of those carriers, the statutory rates and classifications, which prior to that time had bound them as well as complainants, are facts and circumstances which are proper to be considered in determining whether the discriminations alleged to be thus effected are arbitrary, or based on some just and substantial reason. If the conditions and circumstances surrounding the different carriers justify the discriminations between them in rates and classifications, worked out by the statute in connection with the action of the commission which releases certain other carriers from those statutory rates and classifications, and holds the others to observance of them, the manner in which that result is brought about would be immaterial, and so would the circumstance that the result of the operation of the statutes and the action of the commission combined were to give better rates to the carriers who surrendered their constitutional rights to contest the rates in the courts than to those who still insist upon them. Nevertheless, the history of the circumstances under which these different results were brought about, the contracts which led to them, and the action of the commission thereon, all shed light upon the inquiry whether the commission has executed its powers in this respect "with an evil eye and an unequal hand," or reasonably and justly. They are to be considered along with all the other facts and circumstances, and given such weight, in view of them, as the justice of the cases may demand. The allegations regarding these contracts, the circumstances under which they were made, and the action of the commission in reference to them, are therefore proper to be considered, and cannot be stricken for impertinence.

The alleged threats of his excellency to use his power as chief executive to compel the sheriffs and solicitors to arrest and indict the officers and servants of the carriers, notwithstanding the orders of the court, are not impertinent. It was necessary to allege a reason why the injunctions should issue against these prosecutions for the protection

of the property rights of the complainants and the preservation of the jurisdiction of the court to try and determine the reasonableness of the rates. If the jurisdiction of the court was ever a matter of doubt, the doubt has been removed by the decision in Ex parte Young, 209 U. S. 123, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, and that of the Court of Appeals on this branch of the case. See, also, L. & N. R. R. Co. et al. v. Railroad Commission et al. (C. C.) 157 Fed. 944.

In the case of the Louisville & Nashville Railroad Company, the exceptions numbered 3, 5, 8, 9, 12, 17, and 18 are sustained; and exceptions, 1, 2, 4, 6, 7, 10, 11, 13, 14, 15, 16, 19, 20, 21, and 22 are overruled; and exception 23 is sustained in part, and disallowed in part, as set forth in the order entered. In the case of the South & North Alabama Railroad Company, exceptions numbered 3, 5, 8, 9, 12, 17, and 18 are sustained; and exceptions 1, 2, 4, 6, 7, 10, 11, 13, 14, 15, 16, 19, 20, 21, 22, and 23 are overruled; and exception 24 is sustained in part and overruled in part as set forth in the order made herein. In the case of the Nashville, Chattanooga & St. Louis Railway, exceptions numbered 1, 3, 5, 8, 9, 12, 20, 21, 22, and 23 are sustained; and exceptions numbered 2, 4, 6, 7, 10, 11, 13, 14, 15, 16, 17, 18, and 19 are overruled.

The court has duly considered the report of Special Master Stratton in the cases of the South & North Alabama Railroad, and the Louisville & Nashville Railroad Company, as to certain exceptions taken by those companies for impertinence, to certain portions of the answer of respondents in those cases to the original bills, and the report of the special master is confirmed. If it be thought, under this ruling as to the seventh exception in the case of the South & North Alabama Railroad and the first exception in the case of the Louisville & Nashville Railroad Company, the master may be required to take evidence and report, not only whether the rates complained of, as applied in this state, are fair and just, but also to take proof of and enter into a minute inquiry of all the conditions existing in North Carolina, Virginia, Mississippi, and Louisiana, and the justice of each of the particular rates charged therein as applicable to such states, and thus, in the trial of the rates in this state, to enter upon an inquiry as to the justice of the rates in each of the states named, as well as in Alabama, and whether or not particular rates are confiscatory or not, the master may be guarded against the labor and delay thus entailed by the parties asking proper instructions from the court as to how far the testimony should go in these matters.

The cost of these several motions are taxed equally against the parties, one-half in each case against the respondents, and one-half against the complainants.